**AL TECH SPECIALTY STEEL CORP.,**
**et al., Appellees,**

v.

**The UNITED STATES, Appellant.**

**Appeal No. 84-774.**

United States Court of Appeals,
Federal Circuit.

Oct. 3, 1984.

Velta A. Melnbrencis, of Washington, D.C., argued for appellant. With her on the brief were Richard K. Willard, Acting

Asst. Atty. Gen. and David M. Cohen, Director, Washington, D.C.

Paul C. Rosenthal, Washington, D.C., argued for appellees. With him on the brief was David A. Hartquist, Washington, D.C., of Counsel.

Before DAVIS, SMITH and NEWMAN, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal by the United States from a decision of the United States Court of International Trade (CIT)[1] holding that the International Trade Administration (ITA or agency) of the Department of Commerce (Commerce) is required under section 776 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677e(a)[2] to verify information submitted to it by a foreign manufacturer during a periodic review of an outstanding antidumping duty order.[3] We affirm.

## I

On August 28, 1973, the Assistant Secretary of the Treasury published a finding of dumping with regard to stainless steel wire rods from France.[4] 38 Fed.Reg. 22961 (1973). These rods thus became subject to the imposition of an antidumping duty in an amount equal to the difference between the foreign market value and the purchase price for such rods, pursuant to the Antidumping Act of 1921, as amended, 19 U.S.C. § 160(a).

The Antidumping Act of 1921 was subsequently replaced, effective January 1, 1980, by a new antidumping law enacted as part of Title VII of the Tariff Act of 1930, as amended. Title I of the Trade Agreements Act of 1979, Pub.L. 96–39, 93 Stat. 144, 146–193. Section 106 of the new Act provided that "findings in effect on the effective date of this Act ... shall remain in effect, subject to review under [the new] section 751 of the Tariff Act of 1930" (providing for periodic reviews). 93 Stat. 193. In addition, the responsibility for administering the antidumping law and acting as the "administering authority" under section 751 (codified at 19 U.S.C..§ 1675) was transferred from the Treasury Department to the Secretary of Commerce, effective January 2, 1980. At Commerce, the antidumping law's administration was delegated to the ITA.

Final results of the ITA's first administrative periodic review under section 751(a), 19 U.S.C. § 1675(a), with regard to stainless steel wire rods from France, were published on November 9, 1981, covering January 1974 through June 1980. The final results of this review were not challenged in court, although the domestic manufacturers apparently did raise in a prehearing brief the question now before us.

Notice of the preliminary results of the second section 751 periodic review with regard to the rods was published on August 23, 1982 for the period July 1, 1980 through June 30, 1981. 46 Fed.Reg. 55297 (1982). The dispute leading to this appeal began during the administrative review proceeding when the appellees, domestic manufacturers of stainless steel wire rods, contended that the ITA was required under 19 U.S.C. § 1677e(a), *supra* note 2, to verify

1. *Al Tech Speciality Steel Corp. v. United States,* 575 F.Supp. 1277 (CIT 1983). That decision held for the Government on another, now irrelevant, point which is not before us.

2. 19 U.S.C. § 1677e. Verification of information
   (a) General rule
   Except with respect to information the verification of which is waived under section 1673b(b)(2) of this title, the administering authority shall verify all information relied upon in making a final determination in an investigation. In publishing such a determination, the administering authority shall report the methods and procedures used to verify such information. If the administering authority is unable to verify the accuracy of the information submitted, it shall use the best information available to it as the basis for its determination, which may include the information submitted in support of the petition.

3. The CIT remanded the case to the ITA with directions to verify the relevant information.

4. Excepted were rods produced by Crueset-Loire of Paris, France.

the information supplied to it during the review by Ugine Glaciers, the foreign manufacturer, and Intsel Corporation, the domestic importer. Counsel for both Ugine Glaciers and Intsel represented that his clients were available for verification. Notice of the final results of this second administrative review were published on January 21, 1983, 48 Fed.Reg. 2808 (1983); in that notice the ITA responded as follows to appellees' contention concerning verification: "*Department Position:* In Section 751 administrative reviews verification by the Department is discretionary.... [Citation omitted.] We have determined that verification was not required for this review." 48 Fed.Reg. at 2808–2809 (1983).

The domestic manufacturers appealed to the CIT the ITA's refusal to verify, raising three grounds, only two of which now remain in contention (*see* note 1, *supra*): (1) the statute requires verification in all section 751 reviews, and (2) even if verification in section 751 reviews is discretionary, refusal to verify in this case (in which at least eight years had passed since the last verification) was an abuse of discretion. On cross-motions for judgment upon the administrative record, Judge Maletz of the CIT held, as a matter of law, that the ITA is required by statute under section 1677e(a), *supra,* to verify information upon which assessment of antidumping duties is based (including periodic reassessments), and remanded the case for such verification.

## II

■ 19 U.S.C. § 1677e(a), *supra,* states (with an exception not relevant here) that "the administering authority shall verify all information relied upon in making a final determination in an investigation."[5] Appellant contends that the CIT erred in holding that this provision requires such verification in section 751 periodic reviews of outstanding antidumping or countervailing

duty orders under 19 U.S.C. § 1675(a). It maintains that "a final determination in an investigation" occurs only in what appellant calls "the investigative phase" of an administrative antidumping or countervailing duty "proceeding," not in "the assessment phase" of a proceeding in which section 751 periodic reviews occur. Under this theory, the only required verification is in the investigative phase, and any other verification is discretionary with the administering authority. More particularly, appellant maintains that the CIT (1) misconstrued the statutory language; (2) ignored some parts and misconstrued other parts of the legislative history; and (3) failed to follow the principle that, in the absence of statutorily imposed procedures, courts should defer to the judgment of administrative agencies in deciding how best to carry out their duties. In addition, appellant argues that the ITA committed no abuse of its discretion in this case. Because we agree with the CIT that the statute, informed and supported by the legislative history and purpose, requires verification in periodic reviews, we do not reach appellant's arguments concerning the deference to be given agencies in the absence of statutory requirements, or the issue of abuse of discretion.

## III

■ We start with a summary of the statutory requirements for antidumping duty cases under the Trade Agreements Act of 1979. As noted above, the 1979 Act added Title VII to the Tariff Act of 1970, as amended. Title VII contains new antidumping and countervailing duty provisions (sections 701–778 of the Tariff Act of 1930, codified at 19 U.S.C. §§ 1671–1677g), including a new section 751, 19 U.S.C. § 1675. Section 751 or section 1675[6] requires annual reviews of outstanding antidumping and countervailing duty findings.

---

**5.** This provision was specifically added because Congress was dissatisfied with the Treasury's practices on verification (or lack thereof) under the prior law. *See* S.Rep. No. 249, 96th Cong.,

1st Sess. 98, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 484, quoted, *infra* in Part V.

**6.** We refer to section 751 (of the Tariff Act) and section 1675 (of the U.S.Code) indiscriminately.

Because this case involves the assessment of antidumping duties, we focus on the statutory requirements as they pertain to those duties. However, the review provisions at issue apply to administrative reviews of countervailing duty orders as well as antidumping duty orders. It is understood by all parties, as it was by the CIT, that a holding requiring verification in periodic reviews will cover both kinds of cases.[7]

Both parties to this action agree that antidumping inquiries, in those cases in which duties are actually assessed, are composed of two phases: (1) an initial investigatory phase, the less-than-fair-value phase in which it is decided whether impermissible dumping occurred, and (2) the assessment phase, in which sales at less than foreign market value are actually assessed special antidumping duties. A less-than-fair-value investigation may be commenced either by the filing of a petition by an interested party on behalf of the domestic industry that alleges injury because of less-than-fair-value sales, or on the initiative of the ITA, the administering authority. 19 U.S.C. §§ 1673a(a), 1673a(b). The authority must then, within strict time limits (usually within 160 days of the petition's filing), make a preliminary determination concerning less-than-fair-value sales. If the determination is affirmative, liquidation of entries of the imports will be suspended, beginning with the date of publication of the preliminary determination in the *Federal Register*. (The statute also outlines circumstances in which suspension of liquidation could be made retroactive for 90 days. *See* 19 U.S.C. § 1673b(e) ). In addition to liquidation of entries, an affirmative preliminary determination requires importers to post a cash deposit, bond or other security equal to the *estimated* amount by which the foreign market value exceeds the United States price. 19 U.S.C. § 1673b(d)(2).

The ITA must then (within 75 days of the preliminary determination, in the normal case) make a final determination of whether imports are being sold at less than fair value. 19 U.S.C. § 1673d(a)(1). In this case the Government contends that the verification requirement, *supra,* which states that "the administering authority [ITA] shall verify all information relied upon in making a final determination in an investigation", 19 U.S.C. § 1677e(a), refers only to the making of this final determination just described, and not to any of the later determinations in which the actual amounts of duty—rather than estimates—are assessed.

The procedure for actual assessment of duties is as follows: If the ITA's determination is affirmative, and a final injury determination is made by the United States International Trade Commission (Commission), the ITA must issue an antidumping duty order. 19 U.S.C. § 1673d(c)(2). Specifically, within seven days after being notified by the Commission of its injury determination the ITA publishes an antidumping duty order which: (1) includes a description of the class or kind of merchandise to which it applies, (2) requires the *deposit* of *estimated* antidumping duties pending liquidation of entries of merchandise, and (3) requires the *assessment* of antidumping duties within 12 months, the period for which runs from different events depending on whether the merchandise in question was sold prior to importation into the United States. 19 U.S.C. § 1673e(a). Although this provision does direct the actual assessment of antidumping duties, the time requirements are such that, as we understand them, the first actual assessment usually occurs at the time of the first annual administrative review under section 751 of the 1930 Act, 19 U.S.C. § 1675 (the periodic review or administrative review) and is conducted in the same way.[8]

This assessment phase, leading to the determination of the actual amount of antidumping duties, takes place at least once annually under section 751 and requires the

---

7. *See Bethlehem Steel Corporation v. United States,* 742 F.2d 1405, decided by this court on August 27, 1984, for a discussion of the statutory provisions in countervailing duty cases.

8. For that reason, the issue before us normally involves the requirement *vel non* of verification of the first actual assessment of duties, not only of later reassessments.

precise comparison of the United States price for the merchandise with the statutorily defined "foreign market value". The result of this assessment determination is the first and succeeding determinations of actual liability for antidumping duties.

The Government maintains, as we have said, that no verification of information is required for the information relied upon in making a determination of antidumping (or countervailing) duty in the assessment phase, or in a periodic review, because—it claims—such a determination is not "a final determination in an investigation" under § 1677e(a). The Government would have us construe the term "investigation" in § 1677e(a) to cover only that portion of the statute which results in a determination of whether dumping has occurred, i.e., the so-called investigative phase. It maintains that the assessment or periodic review of duties involves neither a "final determination" nor is it part of "an investigation." As we shall show, this position is not required by the wording of the statute, and is inconsistent with the Act in light of its legislative history and purposes. These show that Congress did *not* provide, as appellant contends, that verification is only required of information relied upon in making a determination that a duty is to be assessed, but when the actual assessment of duty takes place, in the assessment or a periodic review, verification of information relied upon in making that determination is entirely discretionary with ITA. On the contrary, the statute, properly read, requires verification at both stages.

## IV

First, the bare text of the statute is, at most for the Government's position, ambig-

uous in its use of the pertinent terms; in our view nothing in the language of the legislation strictly limits the use of the term "investigation" (appearing in § 1677e(a), *supra*) to the investigative phase of the inquiry. Rather, the text permits that term, in that provision, to cover both the investigative and the assessment phases of the proceedings.

There is, to be sure, some uncertainty arising from the statute over the meanings of the terms "investigation", "proceeding", and "final determination." The Government strongly maintains that "investigation" covers only the investigative phase described *supra*, while a "proceeding" encompasses both the investigative and assessment phases, and that the "final determination" occurs only at the end of the investigative phase.

Indeed, the Commerce Department has made this proceeding/investigation distinction by so defining the terms in its regulations. 19 C.F.R. § 353.11.[9] Although this distinction has a certain attractiveness because it seems to do away with an otherwise troubling ambiguity over the meanings of the terms (as well as requires less work of the ITA), we find the distinction—and the regulations which embody it (insofar as that regulation applies to § 1677e(a)) —contrary to the statute and Congressional purpose and intent, to the extent that they apply to the present circumstances.

The truth is that neither term—"investigation" or "proceeding"—is expressly defined in the statute, and that the varied statutory uses of those terms do not support Commerce's rigid distinction between an "investigation" and a "proceeding".

**9.** 19 C.F.R. § 353.11 Definitions of antidumping duty "proceeding," "investigation," "determination" and "Order."

(a) A "proceeding" refers to that time from the filing of a petition (or publication of a notice of self-initiation under section 732(a) of the Act) until the publication of the earliest of:

(1) A notice of termination, (2) a negative determination that has the effect of terminating the administrative proceedings; or (3) a notice of revocation of an Order.

(b) An "investigation" refers to that time between the publication of a notice of initiation and the publication of the earliest of (1) a notice of termination, (2) a negative determination that has the effect of terminating the administrative proceedings; or (3) an Order.

(c) A "determination" is an official decision in the course of a proceeding.

(d) An "Order" is a notice issued following final determinations of sales at less than fair value and injury, which provides for the imposition of antidumping duties.

The first use of the term "investigation" in the antidumping duties portion of the statute occurs in section 1673a(a), the first subsection under the section titled "Procedures for initiating an antidumping duty investigation":

> (a) Initiation by administering authority. —An *antidumping duty investigation* shall be commenced whenever the administering authority determines, from information available to it, that a *formal investigation* is warranted into the question of whether the elements necessary for the imposition of a duty under section 1673 of this title exist (emphasis added).

19 U.S.C. § 1673a(a).

This provision immediately confronts us with a possible ambiguity over the meaning of "investigation," even before the term "proceeding" has been introduced. We could, on the one hand, distinguish between "an antidumping duty investigation" and a "formal investigation," the former referring to all activities which under the statute follow the commencement of such an "investigation," including but not limited to a "formal investigation," and the latter referring to that portion of an investigation that above we have called the investigative phase. This distinction would not be a strained use of the word "investigation." The first phase of "an antidumping duty investigation" would be a "formal investigation" into the question whether there was dumping. The second phase of "an antidumping duty investigation" would be a formal investigation into the exact amount of duties to be assessed. That interpretation is, of course, consistent with the CIT's holding. On the other hand, we could, on the basis of this provision alone, say that there is no such distinction between "antidumping duty investigation" and "formal investigation into the question ...", and that both phrases refer only to the investigative phase, as the Government argues.

Of course, we are neither aided, nor constrained, in our effort to find the proper meaning of the statutory terms by the fact that the usual description for the first part of an inquiry is "the investigative phase." There would be nothing unusual about the use of the bare statutory term "investigation" to cover activities involved in either, or both, the investigative and the assessment phases.

Very little help is provided by the next subsection in the statute, which introduces the term "proceeding":

> (b) Initiation by petition.—
>
> (1) Petition requirements.—
>
> An antidumping *proceeding* shall be commenced whenever an interested party ... files a petition with the administering authority, on behalf of an industry which alleges the elements necessary for the imposition of the duty imposed by section 1673 of this title, and which is accompanied by information reasonably available to the petitioner supporting those allegations.

19 U.S.C. § 1673a(b)(1). (Emphasis added.) Contrasting this use of the term "proceeding" with "investigation" in the preceding subsection, we note that a "proceeding" is commenced by an "interested party" by filing a petition while an "investigation" is commenced (under § 1673a(a), *supra*) by the administering authority "from information available to it, that a formal investigation is warranted." However, that does not necessarily mean that an inquiry (for want of a better term) is called a "proceeding" when initiated by a petition and an "investigation" when initiated by the ITA itself. Under subsection (a) *supra*, the ITA commences an antidumping duty investigation whenever it determines "from information available to it, that a formal investigation is warranted ...." One source of such "information" is, of course, a petition from an "interested party."

If such a petition is filed, a "proceeding" is commenced, following which, under subsection (c), a determination must be made on the petition:

> (c) Petition determination.—
>
> Within 20 days after the date on which a petition is filed under subsection (b) of this section, the administering authority shall—

(1) determine whether the petition alleges the elements necessary for the imposition of a duty under section 1673 of this title and contains information reasonably available to the petitioner supporting the allegations,

(2) if the determination is affirmative, commence an *investigation* to determine whether the class or kind of merchandise described in the petition is being, or is likely to be, sold in the United States at less than its fair value, and provide for *the publication of notice of the determination in the Federal Register, and*

(3) if the determination is negative, dismiss the petition, terminate the *proceeding,* notify the petitioner in writing of the reasons for the determination, and provide for the publication of notice of the determination in the Federal Register.

19 U.S.C. § 1673a(c) (emphasis added).

Thus, if the petition determination is affirmative, an "investigation" is commenced, but the statute has not shed any significant further light on possible limits to the use of that term. If the petition determination is negative, the "proceeding" is terminated under subsection (c)(3).

Based on these provisions, a "proceeding" could conceivably refer only to that 20-day time period between the filing of a petition and a determination on the petition. If the determination is negative, the proceeding is terminated. If it is affirmative, an "investigation" is commenced. In those latter cases, perhaps the "proceeding" is merged into an "investigation," and the terms become interchangeable.[10]

However, a "proceeding" is not commenced under the bare terms of the statute in those instances when the administering authority commences an antidumping duty investigation on its own and the statute does not call for the use of the term "proceeding" for the subsequent investigations in those cases. Thus, under the facial text, considered alone, some proceedings result

in and perhaps become coterminous with an investigation, but not all investigations result from proceedings. As such, the use of "proceeding" by both parties to cover the investigative and assessment phases is, like the use of "investigative and assessment phases," a conventional and helpful usage not required by the language of the legislation.

The bottom line is, of course, that the literal words of the statute by no means require the strict proceeding/investigation distinction urged upon us by the Government, nor are the proper meanings of "investigation" or "proceeding" always clear from the statutory text. The legislative words are quite ambiguous and certainly permit the CIT's interpretation.

The same statutory uncertainty exists as to the meaning of "final determination" in § 1667e, *supra.* That provision requires the verification of information relied upon in making a "final determination" in an "investigation". As with "investigation," the statute does not define "final determination." The Commerce Department's regulation states simply that "[a] 'determination' is an official decision in the course of a proceeding." 19 C.F.R. § 353.11(c). In fact, the administering authority is required to make "determinations" of various kinds throughout the statute. Both the ITA and the Commission must make "final determinations" concerning the existence of dumping under section 1673d, which, if affirmative, lead to the issuance and publication of an antidumping duty order. However, administrative reviews require the "Determination of antidumping duties" under section 1675(a)(2) (section 751 of the Act) which, although lacking the adjective "final", are in fact no less "final" with regard to the duties to be paid until the next periodic review.

The verification provision, furthermore, refers to "*a* final determination in *an* investigation" (emphasis added), an implication being that there may be more than one

---

**10.** This seems to be clearly the case in the uses of "investigation" and "proceeding" in section 777 of the Tariff Act of 1930, "Access to information," including "*ex parte* meetings." 19 U.S.C. § 1677f. Section 1677f immediately follows the verification provision, § 1677e.

of either. Under the Government's argument, there can be only one investigation in a proceeding, and one final determination. We think that that type of limitation is not apparent from the facial language of the statute. *See, e.g.,* § 1677f, "Access to information," note 10, *supra,* which clearly encompasses several "investigations" and several "final determinations." Congress could have specified, but did not, that the final determination in the verification provision refers only to a final determination in an initial, less-than-fair-value, investigation. Such a limit was placed on the final determination mentioned in a provision dealing with investigation hearings:

The administering authority and the Commission shall each hold a hearing in the course of an investigation upon the request of any party to the investigation before making a final determination under section 1671d or 1673d of this title.

19 U.S.C. § 1677c(a). A similar restriction was not placed on the "final determination" in the verification provision.

The sum of it is that, on the face of the statute, the Government's position is not entirely implausible, but neither is it required. The opposing view is at least as tenable. There is therefore no "plain meaning" of the statute on its face. Although we believe the CIT's position to be somewhat the better one on the text of the statute alone, we turn to the legislative history and purposes and find there more telling support for the position that Congress intended a verification requirement in periodic review determinations of duty assessments.

### V

The Government maintains that it did not simply devise on its own a distinction between an investigation and a proceeding in Commerce's regulations, but that it merely implemented Congressional intent, as evidenced by S.Rep. No. 96–249, 96th Cong., 1st Sess. 62 (1979), *reprinted in* 1979 U.S. Code Cong. & Ad.News 381, 448:

The term "investigation" applies to that activity which begins when the authority makes an affirmative determination under section 732(a) or 732(c) [19 U.S.C. § 1673b, § 1673c, or § 1673d], as the case may be. The term "proceeding" applies to that activity which begins when a petition is filed under section 732(b) [19 U.S.C. § 1673a(b) ] and ends upon the final disposition of the case, up to revocation of an antidumping duty order, if any, under section 732, 733, 734, 735, or 751 [19 U.S.C. §§ 1673a, 1673b, 1673c, 1673d, or 1675], as the case may be.

*See also* S.Rep. No. 96–249, 96th Cong., 1st Sess. 42 (1979) (identical language with regard to the countervailing duty provisions); H.R.Rep. No. 96–317, 96th Cong., 1st Sess. 49–57 (countervailing duties) and 59–71 (antidumping duties) (1979) ("investigation" is used to delineate the investigative phase).

We cannot agree that this general statement [11] by itself resolves in the Government's favor the ambiguity inherent in the uses of investigation and proceeding in the statute, as discussed above. More specifically, discussions of the verification requirement in both the Senate and House Reports demonstrate that Congress intended the verification requirement to apply to a periodic review determination as well as to a final determination which leads to the issuance of a countervailing or an antidumping duty order. Neither house's discussion of the verification provision indicates any limitation to the investigative phase. The Senate Report's discussion of the reason for the verification provision refers to verification of information relied upon in *proceedings* which, under the Government's own argument, means the entire inquiry:

Numerous complaints have been made regarding the current practices on verification of information submitted to the Department of the Treasury in antidumping and countervailing duty *proceedings,* particularly information submitted by

---

**11.** It is to be noted that the Congressional statement is not entirely coterminous with the definitions in the Commerce regulation, *supra* note 9.

foreign governments. Section 776 *requires vertification [sic] by the administering authority of all information relied upon,* including governmental submissions. If such information cannot be verified, [Commerce] must then use the best information available in making its determination.

S.Rep. No. 249, 96th Cong., 1st Sess. 98, *reprinted in* 1979 U.S.Code Cong. & Ad. News 381, 484 (emphasis added).

Similarly, the House Report fails to limit the verification requirement to only one phase of an inquiry, emphasizing the importance of using current information in making determinations:

Section 776 requires that *all* information relied upon by the Authority in making a final determination regarding either subsidized or less-than-fair-value imports must be verified unless, with respect to an antidumping *proceeding,* verification is waived under the procedure for a rapid preliminary determination .... The Committee intends that the Authority and the ITC should *always* use the most up-to-date information available.

H.R.Rep. No. 96–317, 96th Cong., 1st Sess. 77 (1979) (emphasis added). It is particularly difficult, as the Government would have us do, to restrict the concept of "always" to only one part of the authority's activities.

In addition, both the Senate and House Reports specify that a section 751 periodic review comprises the duty assessment phase of an antidumping duty *investigation,* an acknowledgement that an investigation comprises more than just the less-than-fair-value phase:

(1) S.Rep. No. 249, 96th Cong., 1st Sess. 80–81 (1979), *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 466–67:

*Reason for the provision* [section 751]: —This provision expedites the administration of the assessment phase of antidumping and countervailing duty investigations.[12]

(2) H.R.Rep. No. 317, 96th Cong., 1st Sess. 72 (1979):

This provision expedites the administration of the assessment phase of antidumping and countervailing duty investigations while providing a greater role for domestic interested parties and introducing more procedural safeguards.

Thus the requirement of verification of information relied upon in the periodic review final determination fits directly with the expressed Congressional purpose.

The result is that, regardless of whether some investigation/proceeding distinction was otherwise intended by Congress, a review of the history demonstrates to us that Congress intended no limitation on the verification requirement to the investigative phase of the inquiry.

The legislative history also supports a broad definition of "final determination" to cover several different kinds of determinations, including periodic review determinations of the specific amount of antidumping and countervailing duties to be imposed:

Subsection (a)(2) of section 516A would render *certain final determinations* subject to review in the Customs Court at the instance of any "interested party" .... These *final determinations* would be confined to: (1) final determinations regarding the imposition of a countervailing or antidumping duty; (2) *periodic determination of the amount of countervailing or antidumping duties to be imposed;* (3) determinations to suspend antidumping or countervailing duty investigations as the result of an agreement eliminating the injurious effects caused by the subsidies or sales at less than fair value; (4) determinations by the International Trade Commission resulting from the review of an agreement to eliminate the injurious effect of subsidized imports of sales at less than fair value.

S.Rep. No. 249, 96th Cong., 1st Sess. 247 (1979), *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 633 (emphasis added).

**12.** Another relevant portion of this Senate Report is quoted *supra.*

This is enough to show that the statute does not have to be read to exclude periodic review determinations from the concept of "*a* final determination" in the verification provision, § 1677e(a) (emphasis added).

Not only does the legislative history (as we have just spelled out) support the application of the verification provision to assessment and periodic reviews, but also it is unquestioned that need for verification at that periodic review or assessment stage is at least as great as in the prior investigative phase when ITA is merely called upon to decide in general whether dumping occurred, and no more than an *estimate* of anticipated dumping duties need be made to determine the proper deposit.[13] The Commerce Department has itself recognized that foreign respondents in section 751 reviews "have incentive to minimize in the submissions the magnitude of their dumping or subsidization." *Michelin X— Radial Steel Belted Tires from Canada,* 46 Fed.Reg. 48,737, 48,739 (1981).[14] Facing the actual payment of duties for the first time in the assessment phase, there is an incentive for foreign respondents to present inaccurate or unreliable data. In holding that Congress intended verification of information submitted in this assessment phase, we agree with the CIT that "it makes little sense to require detailed verification of all information submitted by foreign manufacturers during the less-than-fair-value investigation stage, but not to likewise require such verification when the agency actually assesses antidumping duties." 575 F.Supp. at 1284. In these circumstances, we believe that Congress

chose protection for the domestic industry over administrative convenience for the Commerce Department.

The government urges that verification could not have been required in all periodic reviews because the agency lacks the resources for so much verification. The answer is that the requirement of substantial additional resources for enforcement of the new provisions of the Trade Agreements Act of 1979, a central part of which is the assessment of duties, was specifically anticipated by the House Report:

> The Committee feels very strongly that both the countervailing and antidumping duty laws have been inadequately enforced in the past, including the lack of resources devoted to this important area of law. The provisions of this bill are intended to remedy this situation .... It is the Committee's understanding that the Executive branch will request appropriations for the purpose of making substantial increases in personnel assigned to the administration of the antidumping and countervailing laws. The Committee cannot emphasize too strongly the need for adequate resources and its expectation that they will be provided.

H.R.Rep. No. 317, 96th Cong., 1st Sess. 49 (1979).[15]

### VI

Analysis of the statute in light of its text, legislative history and purpose leads us to conclude that Commerce has not followed the statutory mandate to verify all information relied upon in periodic review

**13.** The United States' reply brief states: "We do not deny that the assessment phase requires more specific price calculations than the investigative phase."

**14.** In *Michelin,* Commerce took the position that although the provisions of section 1677e(a) are not required to be followed in making final section 751 determinations, "these provisions are intended to, and in fact do, apply to section 751 reviews as well [as less-than-fair-value final determinations]." *Michelin,* 46 Fed.Reg. at 48,-739. We find it inconsistent, as well as contrary to the statute, that Commerce considers the application of section 1677e(a)'s express provisions discretionary in section 751 reviews yet

required in less-than-fair-value final determinations. There is no basis in the statute for holding use of the verification provisions to be discretionary at any time. If § 1677e(a) does not apply at all to § 751 determinations, it is hard to see how Commerce can apply it simply when it wishes to do so.

**15.** The other grounds appellant gives for supposing that Congress would have dispensed with a verification requirement for periodic reviews seem to us both extremely tenuous and contrived. As we have pointed out, when the Congressional reports discussed verification they expressly included assessment of duties.

determinations. "Although an agency's interpretation of the statute under which it operates is entitled to some deference, 'this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history' ". *Southern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (quoting *Teamsters v. Daniel,* 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800, n. 20, 58 L.Ed.2d 808 (1979)). *See also Lynch v. Overholsen,* 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962).[16] Here, the purpose and history of the legislation demonstrate that the agency interpretation is "plainly inconsistent with the statute," and contrary to "the clear meaning" of the statute, "as revealed by its language, purpose and history." Regardless of Commerce's construction of its regulations to the contrary in this respect, under the language of the statute, the legislative history, and the Congressional purpose, a section 751 review results in "a final determination in an investigation." Thus, the provisions of section 1677e(a), *supra,* apply to all information relied upon in making a final periodic review determination.

*Affirmed.*

---

**16.** In *Melamine Chemicals, Inc. v. United States,* 732 F.2d 924, 928, this court put it this way: "... the agency's construction of the statute is entitled to great weight.... [A]gency regulations are to be sustained unless unreasonable and plainly inconsistent with the statute, and are to be held valid unless weighty reasons require otherwise."