INTERREDEC, INC., and Interredec Sulfur Corporation, Plaintiffs,

v.

UNITED STATES of America, Malcolm T. Baldrige, Secretary of Commerce, the International Trade Administration of the United States Department of Commerce, William Von Raab, Commissioner of the United States Customs Service, and the Customs Service of the United States Department of Treasury, Defendants.

No. 86–11–01423.

United States Court of International Trade.

Jan. 20, 1987.

Cameron, Hornbostel & Butterman, Larry W. Thomas, Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

TSOUCALAS, Judge.

 Plaintiffs have initiated this action challenging the refusal by the International Trade Administration of the Department of Commerce (ITA) to conduct a § 751 annual review of plaintiffs' imports for the period December 1984 through November 1985.[1] Concurrent with commencement of this action, plaintiffs have moved for injunctive relief,[2] seeking to prevent the

---

**1.** Plaintiffs have initiated this action pursuant to 28 U.S.C. § 1581(i). The court may properly entertain an action under this section when the challenged ITA decision was made during a proceeding that would not culminate in a final determination enumerated in 19 U.S.C. § 1516a and contestable via 28 U.S.C. § 1581(c). *Royal Business Machines, Inc. v. United States*, 69 CCPA 61, 73–74, 669 F.2d 692, 701–702 (1981); *Ceramica Regiomontana, S.A. v. United States*, 5 CIT 23, 557 F.Supp. 596 (1983). In this situation the decision is to exclude plaintiffs from the 12/1/84—11/30/85 review, in which event plaintiffs will be denied access to contest the duty rate for this period. In such circumstances the residual jurisdiction granted to this court

may be invoked. *See British Steel Corp., et. al. v. United States*, 10 CIT ——, 647 F.Supp. 928, 930, (1986) ("the court *agrees with defendants and intervenor* [emphasis added] that in order to contest Commerce's refusal to conduct a § 751 review, plaintiffs must commence a new action pursuant to 28 U.S.C. 1581(i)."), *appeal docketed*, No. 87–1050 (Fed.Cir. Nov. 3, 1986).

**2.** The direction to liquidate plaintiffs' entries was issued on November 14, 1986. On November 17, 1986, this Court granted plaintiffs' request for a temporary restraining order pending the opportunity for oral arguments, which were heard on November 24, 1986.

Customs Service from liquidating their entries and collecting $559,594.25 in cash deposits paid by plaintiffs as estimated antidumping duties. Plaintiffs request either refund of these estimated duties or, the opportunity to have the ITA conduct a review of their imports for the above mentioned period. Defendants have moved to dismiss the action for failure to state a claim for which relief can be granted.

### BACKGROUND

Plaintiffs are foreign exporter and United States importer of Canadian elemental sulfur and their imports are subject to an outstanding antidumping finding. T.D. 74–1, 38 Fed.Reg. 34655 (December 17, 1973). Plaintiffs began selling this product in the United States in December 1982 and were classified as a new importer. Therefore, plaintiffs were required to deposit at the time of entry, estimated antidumping duties at the rate of 28%.[3] This rate is effective until an annual review is conducted of plaintiffs' entries to determine the margin, specifically by which, plaintiffs are dumping. That margin is then used as the rate at which antidumping duties are imposed on plaintiffs' entries. If the amount plaintiffs paid in estimated antidumping duties is greater than the actual rate assessed, plaintiffs are entitled to a refund. 19 C.F.R. § 353.50.

Commerce conducted its first annual review of plaintiffs' imports for the period December 1981—December 1982 (the period was extended from November 1982 until December 1982 for plaintiffs because that was the month in which they began importing). On August 15, 1984, the ITA published preliminary results of this review indicating that plaintiffs had zero dumping margins. 49 Fed.Reg. 32632 (August 15, 1984). On September 18, 1985, the ITA published the final results of this review, concluding that plaintiffs had zero dumping margins, and effective that date, eliminated the deposit requirement. 50 Fed.Reg. 37889.

In the interim, on October 30, 1984, automatic review procedures were amended, whereby annual reviews would only be conducted upon request. On August 13, 1985, the ITA published final and interim-final rules to implement this amendment. 50 Fed.Reg. 32556. On August 30, 1985, the ITA issued notice to all interested parties advising them of the new regulations and informing them that if no timely request was received the entries subject to the antidumping duty order would be liquidated according to the rate of estimated duties on deposit. 19 C.F.R. § 353.53a(d).

On October 23, 1985, a request was filed by a petitioner for an administrative review of plaintiffs' exports for the period 12/1/82—11/30/84. Further, interested parties in the Canadian elemental sulfur proceeding were then given notice of their opportunity to request a review for the period 12/1/84—11/30/85. 50 Fed.Reg. 49739 (December 4, 1985). No request was submitted. Apparently plaintiffs relied on the advice of two case analysts, Jeri Larsen and Joseph Fargo, who were consulted independently. They told plaintiffs not to initiate a review for periods after December 1982, because the zero deposit rate would be effective for all sales by plaintiffs made after that date and plaintiffs would automatically be refunded deposits paid unless a review was requested. Plaintiffs again spoke with Mr. Fargo who stated that they would receive a refund of cash deposits for the period 12/1/84—9/18/85 (since a review was requested from 12/1/82—11/30/84, plaintiffs were not entitled to an automatic refund but had to await the results of that review). In October 1986, Mr. Fargo allegedly stated that he would draft instructions to Customs to liquidate plaintiffs' entries for 12/1/84—9/18/85 at a zero deposit rate so that in effect plaintiffs would receive a refund for this period. However, ITA officials disagreed with this advice and took the position that since plaintiffs had failed to file a timely request for review, the entries

---

**3.** For any new importer not covered by the most recent administrative review, a cash deposit was required at the highest dumping margin rate calculated for that review period. 47 Fed. Reg. 14507, 14510 (April 5, 1982).

would be liquidated at the rate on deposit. Plaintiffs met with ITA officials unsuccessfully and on October 17, 1986 filed a request for review for the period 12/1/84—11/30/85. On November 14, 1986 the ITA issued an order to liquidate the entries at the 28% rate on deposit. Plaintiffs now claim they are entitled to a refund of this money, or alternatively, an administrative review of their 1984–1985 entries should be conducted to determine whether a refund is warranted.

## DISCUSSION

■ In order for plaintiffs to prevail on their motion for a preliminary injunction, they must clearly demonstrate the following: (1) the threat of immediate and irreparable harm; (2) the likelihood of success on the merits; (3) that the public interest would be better served by issuing rather than by denying the injunction; and (4) that the balance of hardships to the parties favors the issuance of an injunction. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.Cir.1983); *S.J. Stile Associates, Ltd. v. Snyder*, 68 CCPA 27, 30, 646 F.2d 522, 525 (1981). It is clear that the liquidation of entries would constitute irreparable harm where the entries are subject to an antidumping duty order which is being challenged. *Zenith Radio Corp.*, 710 F.2d at 810. Absent the injunction, judicial review would be meaningless since the entries would be liquidated at the challenged rate and plaintiffs would not be able to recoup this amount if the rate was ultimately determined to be incorrect. *Id.* at 810. The amount of duty potentially at risk here is $559,594.25, which plaintiffs claim represent approximately 60% of their projected 1986 net income. It seems under these circumstances plaintiffs have met their burden of demonstrating irreparable harm.

■ As to success on the merits of the action, plaintiffs' main contention is that the ITA had an obligation to conduct an annual review of plaintiffs' entries for the 1984—1985 period regardless of whether a request was filed.

The annual review procedures were established by the Trade Agreements Act of 1979, which added Title VII to the Tariff Act of 1930 including a new § 751, providing in pertinent part:

At least once during each 12–month period beginning on the anniversary of the date of publication of ... an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, ... the administering authority, [*if a request for such a review has been received and*] after publication of notice of such review in the Federal Register, shall—

\* \* \* \* \* \*

(B) review, and determine ..., the amount of any antidumping duty,....

Pub.L. 96–39, § 751, 93 Stat. 144, 175 (1984) (19 U.S.C. § 1675(a) (1982)). The underscored language represents the amendment made pursuant to § 611(a)(2)(A) of the Trade and Tariff Act of 1984, Pub.L. 98–573, § 611(a)(2)(A), 98 Stat. 2948, 3031 (1984) (19 U.S.C. § 1675(a)(1985)). Thus, while annual reviews were automatically required, the 1984 amendment, enacted on October 30, 1984, requires these reviews be conducted only upon the receipt of a request. Pursuant to this amendment, on August 13, 1985, the ITA issued a final rule providing that for periods ending prior to September 1, 1985, a request for review would have to be received within forty five days of receipt of the notice (or no later than October 31, 1985), and an interim-final providing for periods ending after September 1, 1985, requests were to be submitted in the anniversary month of the publication date of the antidumping finding. 50 Fed.Reg. 32558, 19 C.F.R. § 353.53a.

Although no request was submitted in December 1985, the anniversary month, plaintiffs argue that the regulations cannot be applied to their entries based on an analysis of the effective date provision of the 1984 Act. Section 626 provides in relevant part:

(a) except as provided in subsections (b) and (c), this Act, and the amendments made by it, shall take effect on the date of the enactment of this Act.

(b)(1) The amendments made by sections 602, 609, *611*, 612, and 620 shall apply with respect to *investigations initiated* by petition or by the administering authority under subtitles A and B of Title VII of the Tariff Act of 1930 on or after such effective date. [Emphasis added.] Pub.L. 98–573, § 626, 98 Stat. 2948, 3042 (1984). The ITA has interpreted the term investigation in § 626 to include § 751 reviews. It is plaintiffs' interpretation that only for those new investigations initiated after October 30, 1984, would there have to be a request to conduct subsequent reviews. Since the *investigation* in this instance was initiated in 1973, then automatic annual reviews were still required. Thus, plaintiffs submit the regulations, which do not distinguish between investigations initiated before and after October 30, 1984, are not applicable to plaintiffs' entries.

Section 626 of the 1984 Act clearly refers to *"investigations initiated* by petition ... under subtitles A and B of Title VII of the Tariff Act of 1930."* Subtitles A and B refer to the *initiation of investigations* including the imposition of antidumping and countervailing duties. However, these subtitles do not include the review procedures of § 751. Section 751 of the 1979 Act, as amended, is encompassed under subtitle C of Title VII of the Tariff Act of 1930. Therefore, a careful reading of § 626 does not support defendants' position that the term "investigation" includes review, and it appears that plaintiffs are entitled to a review of their 1984–1985 entries. *See also Badger-Powhatan v. United States,* 10 CIT ——, 638 F.Supp. 344, 346 n. 2 (1986).

Defendants refer to the decision in *Al Tech Specialty Steel Corp. v. United States,* 745 F.2d 632 (Fed.Cir.1984) holding that "investigation" includes more than just the investigatory stage. The issue however, was whether verification is required during the assessment stage of a "proceeding," which practically speaking occurs at the first § 751 annual administrative review. 745 F.2d at 635. While the court did state that "a § 751 review results in a final determination in an investigation," 745 F.2d at 642, this is secondary to the basic tenet of the decision. The court, in reviewing legislative history, determined that Congress intended no limitation on verification to only the investigative stage, even though the distinction between "proceeding" and "investigation" may have some other application. 745 F.2d at 640. The court was not required to interpret the unambiguous language in § 626; rather, it was confronted with 19 U.S.C. § 1677e(a), the verification provision, containing different phraseology.

■ Defendants maintain that the purpose of the amendment was to eliminate the burdensome responsibility imposed upon Commerce to conduct reviews where interested parties were satisfied with the existing order, and Congressional intent would be frustrated if this Court were to accept plaintiffs' position. While there is no doubt that Congress intended to reduce the Commerce burden, H.R.Rep. No. 98–725, 98th Cong., 2d Sess. 22–23; H.R.Rep. No. 98–1156, 98th Cong., 2d Sess. 180–181, U.S.Code Cong. & Admin.News 1984, p. 4910, it appears unambiguous that this measure would not affect subsequent reviews of investigations already initiated but would be effective only for investigations begun after October 30, 1984. This interpretation is further supported by § 1886(b) of the Tax Reform Act of 1986. Pub.L. 99–514, 100 Stat. 2085 (October 22, 1986). That section, entitled TECHNICAL CORRECTIONS TO COUNTERVAILING AND ANTIDUMPING DUTY PROVISIONS, provides that § 626(b)(1) of the Trade and Tariff Act is amended to include "and to reviews begun under § 751 of that Act,". Therefore, § 626(b)(1) now reads:

The amendments made by sections ..., *611,* ... shall apply with respect to investigations initiated by petition or by the administering authority under subtitles A and B of Title VII of the Tariff Act of 1930 *and to reviews begun under § 751 of that Act,* on or after such effective date.

Plaintiffs contend that while this might be curative legislation it may not be retroactively applied to deprive plaintiffs of their

vested substantive rights in the cash deposits. Defendants argue that this does nothing to change the law but merely clarifies the "inartfully drawn language" in § 626(b)(1), and nonetheless it may be applied retroactively.

The Court finds nothing in the legislative history of the 1986 Act to indicate that Congress intended to cure any defect in its prior enactment. The Senate Finance Committee Report, No. 99–313, 99th Cong., 2d Sess. at 1082, states that the effective date provision of the 1984 Act will now apply to reviews of outstanding antidumping orders as well as to new investigations, which "is consistent with the Congressional intent of these amendments to reduce the cost and increase the efficiency of proceedings." Where, in the 1986 Tax Act Congress intended to "clarify" or "correct" language from a previous act, the legislative history has so indicated. *See* Senate Finance Committee Report, *supra* at 1082 (in reference to § 1886(b)(4): "this bill also *clarifies* ..."); (in reference to § 1886(a): "this bill *corrects errors* in ..."). Furthermore, there is nothing to indicate that Congress intended that this law have retroactive effect. As the Supreme Court has stated:

> The first rule of construction is that legislation must be considered as addressed to the future, not to the past ... [and] a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature'.

*United States v. Security Industrial Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982); *Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964) (quoting *Union Pac. R. Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913)). Nonetheless, it has been represented that plaintiffs have submitted a request for a review on October 17, 1986, which is before the 1986 Act was signed into effect. Therefore, the 1986 Act in no way impedes plaintiffs' claim.

■ Where a "statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissable construction of the statute." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). However, while the agency's construction of a statute which it has been entrusted to administer is normally entitled to great weight, where the language of the statute is unambiguous, the court and the agency must give effect to this clearly expressed intent. *Id.* at 842–843, 104 S.Ct. at 2781–82. Thus, the regulations do not apply to plaintiffs' entries and no request for review was required.

■ Plaintiffs next contend that the regulations violate § 553 of the Administrative Procedure Act (APA), 5 U.S.C. § 553, in failing to provide for notice and comment. These procedures must be provided prior to agency promulgation of substantive rules. However, interpretive or procedural rules are not subject to these requirements. Nor is this section applicable when the agency, for good cause, determines with stated reasons, that such procedures are impractical unnecessary or contrary to public interest. § 553(b)(A) and (B). Plaintiffs claim that despite the label, this rule has substantial impact on the parties effected and is not just a housekeeping rule. The regulation in issue, requiring the submission of a request in the anniversary month, was issued as an interim-final rule on August 13, 1985, and deemed effective immediately. 50 Fed. Reg. 32558. The ITA characterized this as a procedural rule and stated that the cost of delay associated with notice and comment was outweighed by the benefit of immediate implementation. However, Commerce did invite public comment before this became a final rule. *Id.* Further, this rule was issued pursuant to the Commerce interpretive rule reading § 626(b)(1) as having immediate effect and requiring implementation on its date of enactment. 50 Fed.Reg. 5746–5748 (February 12, 1985). Since it is the opinion of the Court that plaintiffs have met their burden in demonstrating that these regulations are not applicable to their 1984—1985 entries, it is not imperative that the Court determine at

this juncture whether the interim-final rules were subject to § 553. Nonetheless, the Court notes that plaintiffs have presented questions which are serious, substantial, difficult and doubtful, therefore plaintiffs' burden in demonstrating success on the merits is minimized. *British Steel Corp. v. United States,* 10 CIT ——, 649 F.Supp. 78, 80, Slip Op. 86–119, at 5 (Nov. 1986). While, the scheme for submitting requests appears to be procedural in nature, since it prescribes a timetable for asserting substantive rights, *Lamoille Valley R. Co. v. I.C.C.,* 711 F.2d 295, 328 (D.C. Cir.1983), the time alloted may be so short and the procedural hurdles so great, that parties are foreclosed from having a meaningful consideration of the underlying controversy. *Id.* at 328.

Furthermore, there was no deadline prescribed in the 1984 statute as to when administrative action was to be taken. *See Lamoille Valley, supra.* Therefore, when Commerce stated there was urgency in issuing this interim-final rule, the fact that it was proposed ten months after the "effective date" of the statute does not support defendants' justification of the "good cause" exception. In reference to the regulation providing for liquidation of entries at the rate on deposit, it arguably has substantial impact on the parties affected. *See Lamoille Valley,* 711 F.2d at 328 ("the issue is one of degree—whether the substantive effect is sufficiently grave so that notice and comment are necessary to safeguard the policies underlying the APA".)

■ Plaintiffs have further attempted to demonstrate that an equitable estoppel principle is applicable to prevent the Government from benefitting from the inaccurate advice of the two case analysts. The Court is not persuaded by the arguments made by plaintiffs. Notwithstanding the vehement dissent in the case, *United States v. Federal Insurance Co., and Cometals, Inc.,* 805 F.2d 1012 (Fed.Cir. 1986), has reaffirmed that estoppel is not available against the government when it acts in its sovereign rather than proprietary capacity. It is doubtful whether the interpretation of the regulations by the case analysts constituted "affirmative misconduct" and whether it was reasonable for plaintiffs to rely on such advice. *See Heckler v. Community Health Services of Crawford,* 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224–25, 81 L.Ed.2d 42 (1984); *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). Defendants refer to the notices issued by the ITA which directed interested parties to contact the Assistant General Counsel for Import Administration, and the letter of August 30, 1985, signed by the Director of Compliance, pointing to plaintiffs' failure to consult these representatives. Whether or not plaintiffs believed that the case analysts were more familiar with their case, and would know the applicability of the new regulations, did not prevent plaintiffs from contacting higher authorities in the ITA, especially in light of the interpretative rule issued in February 1985. Finally, the issue as to whether the ITA effectively waived the filing requirements, based on the case analysts representations is founded on this equitable principle, since there is no legal basis for waiving the requirement. Thus, for the same reasons stated above it appears that there is no estoppel available against the government to deny the effects of any possible waiver.

■ In balancing the hardships by granting this injunction, the Court can find nothing more than an inconvenience to the government in having to conduct an administrative review. While the government acts as merely a stakeholder, the plaintiffs stand to lose the sum of money on deposit. In these circumstances, the balance of hardships clearly weigh in plaintiffs' favor. *Timken Co. v. United States,* 6 CIT 76, 81, 569 F.Supp. 65, 71 (1983). Where the denial of this injunction would inflict irreparable harm on plaintiffs, and where they have presented serious legal questions, it is appropriate for this Court to issue an injunction to maintain the status quo. *American Air Parcel Forwarding,* 1 CIT 293, 298–299, 515 F.Supp. 47, 53 (1981). The Court finds that it would be in the public interest to grant this injunction. "The public interest is best served when agencies act in conformity with a statutory mandate designed to achieve goals inuring to the pub-

lic benefit." *Hyundai Pipe Co., et. al. v. United States*, 10 CIT ——, 650 F.Supp. 174, 177 (1986). ·Clearly, the suspension of liquidation pending the results of the review poses no harm to the public, while the accurate determination as to plaintiffs' dumping margin does foster the orderly administration of the antidumping laws which benefits the public.

### CONCLUSION

The Court finds that plaintiffs have met their burden as to demonstrating the requirements for the issuance of a preliminary injunction. Therefore, plaintiffs' motion is granted and defendants' motion to dismiss is denied. The Customs Service is enjoined from liquidating plaintiffs' entries from 12/1/84—9/18/85 pending the final outcome of this action. So ordered.