**BADGER–POWHATAN, A DIVISION OF FIGGIE INTERNATIONAL, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**Rubinetterie A. Giacomini, S.P.A., Intervenor.**

No. 85–4–00467.

United States Court of International Trade.

June 27, 1986.

Stewart & Stewart, Eugene L. Stewart and Terence P. Stewart, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Velta A. Melnbrencis, Civ. Div., Dept. of Justice, for defendant.

Klayman & Gurley, P.C., Larry Klayman, for intervenor.

**OPINION**

RESTANI, Judge:

Intervenor Rubinetterie A. Giacomini, S.P.A. (Giacomini), moves for a stay of enforcement of this court's opinion and order remanding this case to the Department of Commerce International Trade Administration (ITA) for issuance of an amended final determination and corresponding antidumping duty order. CIT Rule 62(d) (provides for stays pending appeal upon filing of supersedeas bond); *Badger-Powhatan v. United States,* 10 CIT ——, 633 F.Supp. 1364 (1986), *appeal docketed,* No. 86–1251 (Fed.Cir. May 13, 1986). Plaintiff Badger-Powhatan opposes the motion. Defendant ITA does not oppose the motion.

In the appealed opinion, the court held that ITA erred in failing to recalculate the less than fair value (LTFV) margin of certain brass fire protection products imported from Italy, after the International Trade Commission determined that only a subclass of the class of merchandise sold at LTFV is causing material injury to an industry in the United States. ITA was ordered to recalculate the margin based on information available in the agency record. An amendment to the final determination and antidumping order containing the recalculated margin was issued on May 15, 1986. 51 Fed.Reg. 17,783 (1986).

Defendant ITA contends that intervenor's appeal prevents ITA from implementing the latest final determination and antidumping duty order until a final judicial decision has been reached, citing *Melamine Chemicals, Inc. v. United States,* 732 F.2d 924 (Fed.Cir.1984). In *Melamine,* the Court of Appeals for the Federal Circuit held that "[a]bsent an injunction of liquidation, 19 U.S.C. § 1516a requires that the challenged determination shall govern the liquidation of entries 'while the litigation is proceeding.'" *Id.* at 934 (quoting S.Rep.No. 249, 96th Cong., 1st Sess. 248, *reprinted in* 1979 U.S. Code Cong. & Ad. News 381, 634).[1] The court also indicated

---

1. 19 U.S.C. § 1516a(c)(1) (1982) reads in pertinent part:

**Liquidation in accordance with determination.**—Unless such liquidation is enjoined by the court under paragraph (2) of this subsec-

that a "final court decision" would govern over the challenged determination. The court notes that *Melamine* involved the question of whether a challenged negative determination of the agency should govern the process of liquidation pending appeal of a decision rescinding the determination. It did not address the question raised by intervenor of whether the agency should undertake other administrative procedures consistent with appealed CIT opinions. Whether or not the decision reached by the CIT here may be considered a controlling final court decision, nothing in *Melamine* prevents ITA from amending the final determination and order at this point in the proceedings, as it has done, and, as discussed *infra*, the agency must implement its new determination.

■ The essential issue here is which agency determination governs the amount of estimated antidumping duties importers must deposit on entries occurring between the time of this court's order and the last judicial decision rendered in this case. The court rejects defendant's contention that *Melamine* mandates a stay pending appeal in this case, for at least two reasons. First, *Melamine* addressed the issue of when a challenged determination should govern the process of *liquidation*, pursuant to section 1516a(c)(1). This provision does not apply in this case because neither of the determinations here will result in any immediate liquidations. In the instant case, duties will not actually be assessed until after the first annual review is completed, and that annual review may alter

the results of the present determinations. *See* 19 U.S.C. § 1675(a) (1982).[2] Therefore, it is incorrect to assume that the antidumping determination and order will govern liquidation if no stay pending appeal is granted. Because *Melamine* involved a challenged final negative determination, liquidation could have occurred at any time following issuance of the determination. The CIT's recision order and subsequent suspension order interfered with this liquidation process. Such a late imposed suspension is not the equivalent of an injunction which results from a fully considered motion for preliminary injunction, sought at the outset of a case. The *Melamine* court stated it was concerned about a "yoyo" effect on liquidations. *Melamine*, 732 F.2d at 934. In *Melamine*, liquidations were subject to a start-stop effect. In this case, no liquidation could have occurred and none will occur until the annual review is completed.

Second, this case presents an unusual situation in which subsequent to plaintiff's filing of suit challenging a final determination, ITA altered its position to agree with plaintiff that the challenged determination was incorrect. If intervenor had not already entered the suit on behalf of ITA's original position, the case would have been dismissed and defendant would have recalculated the LTFV margin in precisely the way it has now done pursuant to the court's order. Inasmuch as ITA now acknowledges that the challenged determination was incorrect, requiring deposits to be made in accordance with that determination

---

tion, entries of merchandise of the character covered by a determination of the Secretary, the administering authority, or the Commission contested under subsection (a) of this section shall be liquidated in accordance with [such] determination ... if they are entered, or withdrawn from warehouse, for consumption on or before the date of publication in the Federal Register by the Secretary or the administering authority of a notice of a decision of the United States Court of International Trade, or of the United States Court of Appeals for the Federal Circuit, not in harmony with that determination.

**2.** In 1984, 19 U.S.C. § 1675(a)(1) was amended to only require periodic review "if a request for

such a review has been received." Pub.L. No. 98–573, § 611(a)(2)(A), 98 Stat. 3031 (1984) (codified as amended 19 U.S.C. § 1675(a)(1) (Supp. II 1984)). This amendment is only applicable to investigations initiated on or after October 30, 1984. Pub.L. No. 98–573, § 626(b)(1), 98 Stat. 3042 (1984). Plaintiff filed the antidumping petition in this case on January 3, 1984. Consequently, the 1984 amendments are not applicable and a review of the order must be conducted at least once during "the 12–month period beginning on the anniversary of the date of publication [of the] antidumping duty order" pursuant to the 1982 version of the statute.

constitutes deference to a position supported only by intervenor, and disavowed by both the agency and the court. Although the court finds *Melamine* not controlling on the issue of the amount of deposit required, the *Melamine* facts present an interesting parallel to the facts at hand. In *Melamine*, ITA initially issued an affirmative final determination. On reconsideration, and after a hearing and additional briefing, ITA amended its original findings. This amended final negative determination was the subject of the suit. *Melamine*, 732 F.2d at 925. The Federal Circuit considered this amended determination to be the determination which controlled the liquidation process. *Id.* at 934–35. For purposes of the pending motion, the court finds no basis for distinguishing between a determination which is amended by the agency on its own because of errors in the original determination and one which is amended after the court agrees with the agency that amendment is necessary. Thus, even if *Melamine* has broader application than the court believes it does, that is, that the rule of *Melamine* applies to the entire entry process, a stay pending appeal is not required in this case. Given these factors, the court finds that the most recent determination and order must govern the amount of deposits to be made while the appeal is pending, unless a stay of the judgment is appropriate under CIT Rule 62 or otherwise.

As indicated, intervenor contends that it is entitled to a stay of the judgment as of right under CIT Rule 62(d). Rule 62(d) provides that a party who has appealed "may obtain a stay" by giving a supersedeas bond.[3] This language is generally interpreted as standing for the proposition that "the appellant who files a satisfactory supersedeas bond [is entitled] to a stay of money judgment as a matter of right."

*Federal Prescription Service, Inc. v. American Pharmaceutical Association*, 636 F.2d 755, 759 (D.C.Cir.1980) (emphasis omitted) (citing *American Manufactures Insurance Co. v. American Broadcasting Paramount Theatres, Inc.*, 87 S.Ct. 1, 3, 17 L.Ed.2d 37 (1966) (Harlan, J., Circuit Justice)); *see American Grape Growers Alliance for Fair Trade v. United States*, 9 CIT ——, Slip Op. 85–104 at 4 (Oct. 7, 1985). *Compare J. Perez & Cia, Inc. v. United States*, 578 F.Supp. 1318, 1320 (D.P.R.1984) ("Traditionally, the supersedeas bond has been confined to money judgments from which a writ of execution can issue.") (citing *Hovey v. McDonald*, 109 U.S. 150, 3 S.Ct. 136, 27 L.Ed. 888 (1883)), *aff'd*, 747 F.2d 813 (1st Cir.1984) *and* 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 62.06 (2d ed. 1985) ("Under Rule 62(d), a party taking an appeal from a money judgment rendered against him in a district court can stay proceedings to enforce that judgment pending appeal by furnishing a supersedeas bond.") *with Donovan v. Fall River Foundry Co.*, 696 F.2d 524, 526 (7th Cir. 1982) ("The reference in Rule 62(d) to supersedeas bond suggests that had the framers thought about the point they would have limited the right to automatic stay to cases where the judgment being appealed from was a 'money judgment.' ").

Intervenor contends that the order of this court in Slip Op. 86–38 is a money judgment because "it will result in the payment of additional amounts of antidumping duty deposits on future entries of pressure restricting valves and siamese connectors." Memorandum in Support of Intervenor, Rubinetterie A. Giacomini, S.P.A., for Stay Pending Appeal at 3. Plaintiff argues that such is not the case because this court's order "did not itself grant a money judgment, or even calculate and impose estimated duties." Plaintiff's Opposition to Inter-

---

**3.** CIT Rule 62(d) reads as follows:

   **(d) Stay Upon Appeal.** When an appeal is taken, the appellant, by giving a supersedeas bond, may obtain a stay subject to the exception contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

   The exception contained in subdivision (a) referred to in Rule 62(d) relates to actions seeking injunctions and is thus not relevant to this action.

venor's Motion for Stay Pending Appeal at 4.

A money judgment "adjudges a defendant . . . absolutely liable to pay a sum certain to the plaintiff, . . . awards execution therefor, and . . . may be fully satisfied by the defendant by paying into court the amount adjudged, with interest and costs." *Fuller v. Aylesworth*, 75 F. 694, 701 (6th Cir.1896). Initially, the court notes that the judgment in this case does not comport with this classic definition.[4] As noted *supra*, the final determination and antidumping duty order will not result in the actual assessment of antidumping duties, rather importers will be required to deposit estimated antidumping duties. 19 U.S.C. § 1673e(a)(3) (1982). The permanent exchange of money will occur only after a periodic review of the duty. *See supra* note 2 and accompanying text. Moreover, the use of a supersedeas bond to stay the remand order in this case would not further the policy considerations underlying Rule 62(d).

"The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal." *Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir.1979). The bond protects a judgment debtor from the risk of satisfying the judgment, only to be unable to obtain restitution if reversal occurs on appeal. *Id.* at 1191. Likewise, the bond secures the judgment creditor against

the possibility of loss sustained as a result of being forced to forego execution on the judgment during the course of an ineffectual appeal. *Id.* As noted above, the order challenged in this case remanded the case to ITA for issuance of an amended final determination and antidumping duty order requiring certain deposits. *Badger-Powhatan v. United States*, 10 CIT ——, 633 F.Supp. 1364 (1986), *appeal docketed*, No. 86–1251 (Fed.Cir. May 13, 1986). This order is not, however, the type of money judgment for which an automatic stay is warranted for the purposes of Rule 62(d). First, as plaintiff notes, intervenor is not responsible for paying antidumping duties or interim deposits. For that reason, among others, no judgment may be entered directing intervenor to pay a specific sum. The responsibility for eventual payment falls to the importers of intervenor's goods. 19 U.S.C. § 1673g (1982).[5] Such importers are not parties to this suit. The filing of a bond by *intervenor* will not guarantee the payment of the duties by those required to pay, and the statutory scheme is carefully designed to require payment from importers, so that the equalizing purposes of the act are carried out. *See* 19 U.S.C. § 1673g(b)(3), (4) (1982) (importer must state under oath that "he is not an exporter, or if he is an exporter," must indicate the exporter's sales price of the merchandise and must pay, or agree to pay on demand, antidumping duties); S.Rep. No.

---

**4.** *Zenith Radio Corp. v. United States*, 2 CIT 8, 518 F.Supp. 1347 (1981), cited by intervenor as support for the proposition that the judgment in the instant case is a "money judgment," is inapposite. First, the rule at issue in *Zenith* was CIT Rule 65(c). *Id.* at 8 & n. 1, 518 F.Supp. at 1348 & n. 1. This rule requires the posting of security as a prerequisite to injunctive relief. The purpose of this security is to provide recoverable damages that arise from operation of the injunction itself, not from damages occasioned by the underlying suit. *Lever Bros. Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115, 120 (4th Cir.1976). Thus, the fact that the court required the *Zenith* plaintiff to post security in an antidumping suit does not indicate that the court considered the suit one for a money judgment. Second, at issue in *Zenith* was the propriety of a $77 million settlement between the Secretary of Commerce and

importers for uncollected antidumping duties. 2 CIT at 8, 518 F.Supp. at 1348. Litigating the propriety of a settlement in an antidumping case is fundamentally different from litigating the proper calculation of the antidumping deposits.

**5.** Intervenor notes that the domestic importers of Giacomini's pressure restricting valves and siamese connectors are already fully bonded for the payment of any and all customs duties to the U.S. government. Presumably Customs is requiring bonds sufficient to cover the deposits for duties as formerly calculated. There is no evidence that the bonds will cover the newly calculated duties. In any case, this factor is irrelevant, as demonstrated by the discussion in the text.

249, 96th Cong., 1st Sess. 37, *reprinted in* 1979 U.S.Code Cong. & Ad.News 381, 423 (Dumping is one of "the most pernicious practices which distort international trade to the disadvantage of United States commerce. ... Antidumping duties are special duties imposed to offset the amount of the difference between the fair value of the merchandise and the price for which it is sold in the United States, *i.e.,* the dumping margin."). Second, as indicated by such legislative history, the antidumping act is not designed to compensate plaintiff directly for damages or to raise revenue for the United States. Posting a bond here, therefore, would not preserve for the prevailing parties the benefits of the court's decision applying the antidumping laws. Thus, the posting of a bond will not serve any of the purposes that normally make a stay as of right available when a money judgment is involved.

■ Having determined that intervenor is not entitled to a stay as of right, the court must determine whether intervenor has demonstrated that it is entitled to a discretionary stay. In determining whether the interests of justice will be served by the grant of a stay, the court must consider the following four factors:

(1) whether the petitioner is likely to prevail on the merits of his appeal, (2) whether, without a stay, the petitioner will be irreparably injured, (3) whether issuance of a stay will substantially harm other parties interested in the proceeding, and (4) wherein lies the public interest.

*Philipp Brothers, Inc. v. United States,* 10 CIT —, 640 F.Supp. 261 at 262 (1986) (quoting *McSurely v. McClellan,* 697 F.2d 309, 317 (D.C.Cir.1982), *cert. denied,* — U.S. —, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985)).

The court finds the first factor to be of limited significance in this determination. While intervenor's argument is not frivolous, the court has no reason to doubt the validity of its original holding. *See Philipp Brothers,* 10 CIT at —, 640 F.Supp. at 264; *American Grape Growers Alli-*

*ance for Fair Trade v. United States,* 9 CIT —, Slip Op. 85–104 at 5–6 (Oct. 7, 1985). Thus, the focus of the court's discussion will be on the remaining factors.

The second, and critical, factor requires the movant to affirmatively demonstrate that it will suffer irreparable harm unless the stay is granted. Intervenor has not even attempted to meet this burden, stating that granting the stay "would work no harm or prejudice to any party." Memorandum in Support of Motion of Intervenor, Rubinetterie A. Giacomini, S.P.A., for Stay Pending Appeal at 7. Intervenor has not met its burden of claiming irreparable harm, much less its burden of substantiating the claim. *See Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985).

■ Furthermore, the mere statement that no party will be harmed is insufficient to satisfy intervenor's burden of establishing that the stay will not harm any other party. *Kansas City Royals Baseball Corp. v. Major League Baseball Players Association,* 409 F.Supp. 233, 268 (W.D. Mo.), *aff'd,* 532 F.2d 615 (8th Cir.1976). In fact, if anything, this factor weighs against intervenor, in that plaintiff has argued in its brief that it will suffer harm if a stay is granted. Intervenor has not disputed this claim. Thus, intervenor has also failed to provide any basis for a finding in its favor on the third factor, that of absence of harm to parties other than the movant if the stay is granted.

■ Finally, intervenor claims that granting of a stay would be in the public interest because it would facilitate a lawful appeal without causing harm to any party. Even if there is no such harm, this argument virtually eliminates the fourth factor as a useful standard and overlooks the fact that "[a] stay pending appeal is always an extraordinary remedy." *Golden Eagle Refining Co. v. United States,* 4 Cl.Ct. 622, 624 (1984) (quoting *Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees v. National Mediation Board,* 374 F.2d 269, 275 (D.C.Cir.1966)). There is some public

interest in denying stays pending appeal "because they interrupt the ordinary process of judicial review and postpone relief for the prevailing party." *Dellums v. Smith,* 577 F.Supp. 1456, 1457 (N.D.Cal. 1984); *see also Philipp Brothers, supra,* 10 CIT at ——, 640 F.Supp. at 266. Intervenor has offered no substantial public interest reason for the granting of a stay. In its own words, no party will be harmed by the granting of, or the denial of, a stay. In such a situation the public interest in following the ordinary methods of proceeding must prevail.

Intervenor has failed to demonstrate that a stay is available as a matter of right or should be granted at the discretion of the court. Intervenor's motion for a stay pending appeal is denied.