The TORRINGTON COMPANY, Plaintiff,

v.

UNITED STATES, Defendant.

Slip Op. 95–160.
Court No. 93–03–00144.

United States Court of
International Trade.

Sept. 15, 1995.

---

Stewart and Stewart, Washington, DC (Terence P. Stewart, Washington, DC, Wesley K. Caine, McLean, VA, and Patrick J. McDonough), Washington, DC, for plaintiff.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division,

U.S. Department of Justice (Marc E. Montalbine); of counsel: Dean A. Pinkert, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Washington, DC, for defendant.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Torrington Company ("Torrington"), moves pursuant to Rule 56 of the Rules of this Court for summary judgment on the ground that there is no genuine issue as to any material facts. Defendant cross-moves for summary judgment seeking an order dismissing this case.

Torrington challenges the assessment of antidumping duties by the United States Customs Service ("Customs"), pursuant to the instructions of the Department of Commerce, International Trade Administration ("Commerce"), on entries dating from November 9, 1988 to May 15, 1989. *See Antidumping Duty Orders and Amendments to the Final Determinations of Sales at Less Than Fair Value: Ball Bearings, and Cylindrical Roller Bearings and Parts Thereof From the United Kingdom ("Amended Final Results")*, 54 Fed.Reg. 20,910 (1989). This matter is presently before the Court to determine whether Customs properly assessed antidumping duties for entries made between the date of publication of the preliminary determination and the date of publication of the Final Results employing the "all others" rate. *See Preliminary Determinations of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the United Kingdom ("Preliminary Determination")*, 53 Fed.Reg. 45,312 (1988).

### Background

On April 27, 1988, Commerce initiated an antidumping duty investigation concerning ball bearings and cylindrical roller bearings and parts thereof from the United Kingdom. *Initiation of Antidumping Duty Investigation; Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof*

*From the United Kingdom,* 53 Fed.Reg. 15,-081 (1988).

On November 9, 1988, Commerce preliminarily determined that antifriction bearings from the United Kingdom were being, or were likely to be, sold in the United States at less than fair value. *Preliminary Determination,* 53 Fed.Reg. at 45,312. Commerce directed Customs to suspend liquidation of all entries of ball bearings and cylindrical roller bearings for the United Kingdom that were entered, or withdrawn from warehouse, for consumption on or after the date of publication of the preliminary determination. *Id.* at 45,317.

Commerce published its final determination on May 3, 1989. *Final Determinations of Sales at Less Than Fair Value; Antifriction Bearings (Other Than Spherical Plain Bearings and Tapered Roller Bearings) and Parts Thereof From the United Kingdom; and Final Determination of Sales at Not Less Than Fair Value: Spherical Plain Bearings Parts Thereof From the United Kingdom ("Final Results"),* 54 Fed.Reg. 19,-120 (1989). On May 15, 1989, Commerce published an antidumping order and an amended final determination. *Amended Final Results,* 54 Fed.Reg. at 20,910.

On May 8, 1990, Commerce published a notice stating that interested parties could request an administrative review with respect to the antidumping duty order for antifriction bearings from the United Kingdom. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review,* 55 Fed.Reg. 19,093 (1990). Torrington did not request an administrative review.

Thereafter, pursuant to Commerce's instructions, Customs liquidated the merchandise entered by Torrington during the first administrative review period at rates equal to the cash deposit of estimated antidumping duties at the time of entry.

Within ninety days of each liquidation, Torrington filed protests with Customs, requesting that entries made during the period

between the publication of the preliminary determination and the publication of the amended final results, November 9, 1988 to May 15, 1989, be assessed at rates listed in the amended final determination rather than the cash deposit rates in effect at the time of entry. *See* Protest numbers 1001 2–101168, 1001 2–101171, 1001 2–101177, 1001 2–102380, 1001 2–101319, 1001 2–101166, 1001 2–102381 and 1001 2–103860. *See also Plaintiff's Exhibit A.* Customs partially approved and partially denied each protest and reliquidated the entries.[1] Customs denied Torrington's claim that it was unlawful to apply preliminary antidumping rates to the challenged entries.

Torrington now moves pursuant to Rule 56 of the Rules of this Court for summary judgment, claiming that Customs assessed excessive antidumping duties on its entries between the publications of the preliminary determination and the amended final results. Specifically, Torrington challenges the validity of the automatic assessment of duties pursuant to 19 C.F.R. § 353.22(e) (1990). Defendant opposes Torrington's motion and cross-moves for summary judgment pursuant to Rule 56 of the Rules of this Court.

### Discussion

■ On a motion for summary judgment, it is the function of the court to determine whether there remain any genuine issues of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the Court determines that no genuine issue of material fact exists, summary judgment is properly granted when the movant is entitled to judgment as a matter of law. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387 (Fed.Cir.1987). In the case at bar, this Court finds that there are no genuine issues of material fact, the dispositive issues to be resolved are legal in nature and, therefore, summary judgment is proper.

### 1. *Jurisdiction*

Torrington contends that this Court's jurisdiction is derived from 28 U.S.C. § 1581(a)

---

1. Customs granted Torrington's protests concerning classifications which are not an issue in

the present case.

(1988) and, in the alternative, 28 U.S.C. § 1581(i) (1988 & Supp. V 1993). *Statement of Material Facts as to Which Plaintiff Contends There is No Genuine Issue to be Tried* at 1. Torrington argues that 19 U.S.C. § 1514(a) (1988 & Supp. V 1993) gives importers the right to protest the decision of a customs officer concerning the assessments of liquidated antidumping duties imposed under automatic assessment procedures. *Plaintiff's (a) Response to Defendant's Cross–Motion for Summary Judgment and (b) Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply Brief")* at 11. Torrington contends that the language in 19 U.S.C. § 1514(a) referring to the right to protest the decisions of a customs officer "including the legality of all orders and findings entering into the same as to, *inter alia,* the amount of duties chargeable" supports its position. *Plaintiff's Reply Brief* at 11. *See also* 19 U.S.C. § 1514(a). Torrington maintains that since the automatic assessment procedure under 19 C.F.R. § 353.22(e) does not provide for review under 19 U.S.C. § 1581(c) (1988) because there was no administrative review by Commerce, § 1581(a) is a proper basis of jurisdiction. *Memorandum of The Torrington Company, Plaintiff, in Support of Motion for Summary Judgment ("Plaintiff's Brief")* at 22–23.

Torrington cites 28 U.S.C. § 1581(i) as an alternative basis of jurisdiction. *Plaintiff's Brief* at 23–24.

Commerce concedes that this Court has jurisdiction pursuant to 28 U.S.C. § 1581(i), but maintains that this Court does not have jurisdiction under 28 U.S.C. § 1581(a). *Defendant's Cross–Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Brief")* at 6. Commerce claims that in order for the Court to possess jurisdiction pursuant to 28 U.S.C. § 1581(a), the issues raised must be properly protestable. *Defendant's Brief* at 7. According to Commerce, the calculation of antidumping duties is not within the province of Customs and, therefore, is not properly protestable. *Id.*

Commerce claims that the Court of Appeals for the Federal Circuit ("CAFC") in

*Nichimen America, Inc. v. United States,* 938 F.2d 1286 (Fed.Cir.1991), interpreted the Trade Agreements Act of 1979 ("1979 Act") to establish a procedure whereby Commerce is charged with the final calculation and assessment of antidumping duties. *Defendant's Brief* at 7–9. According to Commerce, § 751 of the 1979 Act, codified at 19 U.S.C. § 1675 (1988), established that antidumping determinations would be reviewed through an administrative review process by Commerce, rather than through administrative protests to Customs. *Defendant's Brief* at 8. Commerce maintains that Torrington's failure to request an administrative review precludes a proceeding under 28 U.S.C. § 1581(a). *Id.* at 9.

Commerce further contends that Torrington may not use 19 U.S.C. § 1514(a) to contest a regulation promulgated by Commerce. *Id.* at 10. Commerce interprets 19 U.S.C. § 1514(a) to permit protests of decisions of "customs officer[s]" only. *Id.*

Section 1581 of Title 28, United States Code, provides: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." Section 515 of the Tariff Act of 1930 corresponds to 19 U.S.C. § 1515 (1988 & Supp. V 1993) which requires Customs to issue a decision granting or denying a protest filed under 19 U.S.C. § 1514. Section 1514(a) of Title 19, United States Code, enumerates the decisions of Customs which are subject to protest as follows:

[D]ecisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determi-

nation appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under section 1520(c) of this title;

shall be final and conclusive upon all persons ... unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade....

Torrington relies on 19 U.S.C. § 1514(a)(2) to support its claim that Customs' assessments pursuant to 19 C.F.R. § 353.22(e) are subject to protest. Section 353.22(e) permits automatic assessment of duties as follows:

(1) For orders, if the Secretary does not receive a timely request under paragraph (a)(1), (a)(2), or (a)(3) of this section, the Secretary, without additional notice, will instruct the Customs Service to assess antidumping duties on the merchandise described in paragraph (b) of this section at rates equal to the cash deposit of, or bond for, estimated antidumping duties required on that merchandise at the time of entry, or withdrawal from warehouse, for consumption and to continue to collect the cash deposits previously ordered.

19 C.F.R. § 353.22(e) (1990). Paragraph (a) refers to requests for administrative reviews pursuant to 19 U.S.C. § 1516a (1988 & Supp. V 1993). Thus, if an importer does not request an administrative review, Customs automatically assesses antidumping duties.

■ This Court agrees with Commerce that the assessment of antidumping duties are not properly protestable under 19 U.S.C. § 1514(a). In *Mitsubishi Elecs. America, Inc. v. United States,* 44 F.3d 973 (Fed.Cir. 1994), the CAFC rejected Mitsubishi's argument that this court had jurisdiction under 28 U.S.C. § 1581(a) to hear Mitsubishi's protest challenging the application of the automatic assessment provision where no administrative review was requested. The CAFC determined that 19 U.S.C. § 1514(a) applies exclusively to decisions made by Customs. *Mitsubishi,* 44 F.3d at 976. Concluding that the assessment and collection of antidumping duties is based on decisions by Commerce, not Customs, the CAFC stated the following:

Customs merely follows Commerce's instructions in assessing and collecting duties. Customs does not determine the "rate and amount" of antidumping duties under 19 U.S.C. § 1514(a)(2). Customs only applies antidumping rates determined by Commerce. Further, Customs has merely a ministerial role in liquidating antidumping duties under 19 U.S.C. § 1514(a)(5).

In sum, title 19 makes clear that Customs does not make any section 1514 antidumping "decisions." Customs actions regarding dumping do not fall within 19 U.S.C. § 1514(a). Thus, without a decision under section 1514(a), the trial court correctly determined that it lacked jurisdiction under section 1581(a).

*Id.* at 977 (citations omitted).

■ Accordingly, this Court finds that it does not have jurisdiction under 28 U.S.C. § 1581(a). However, as conceded by both parties, this Court has jurisdiction pursuant to 28 U.S.C. § 1581(i).[2] Title 28, United States Code, section 1581(i) is the appropri-

---

**2.** 28 U.S.C. § 1581(i) (1988 & Supp. V 1993) states:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenues;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

ate basis of jurisdiction because Torrington could not invoke the remedies contained in § 1581(a)–(h). *See Mitsubishi,* 44 F.3d at 977. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1581(i).

## 2. *Assessment of Antidumping Duties*

Torrington claims that Customs' assessment of antidumping duties based on Commerce's preliminary determinations, pursuant to 19 C.F.R. § 353.22(e), is inconsistent with the antidumping duty statute. *Plaintiff's Brief* at 8–11. Torrington's contention is based upon 19 U.S.C. §§ 1673 and 1673e (1988) which require customs officers to assess and impose an antidumping duty on merchandise equal to *"the amount* by which the foreign market value" exceeds the United States price. *Plaintiff's Brief* at 9 (emphasis supplied). Torrington interprets "the amount" to mean the rate determined in final determinations which, according to Torrington, is more reliable than the preliminary rate. *Plaintiff's Brief* at 9–10.

In the alternative, Torrington asserts that 19 C.F.R. § 353.22(e) conflicts with the "refund" clause in 19 U.S.C. § 1673f(a)(2) (1988 & Supp. V 1993). *Plaintiff's Brief* at 16. Torrington contends that this section requires that duties be assessed at the lower of the preliminary or the final dumping rates where security is posted for entries made during the period between Commerce's preliminary determination and the issuance of the antidumping duty order. *Plaintiff's Brief* at 16–17. Torrington asserts that 19

C.F.R. § 353.22(e) conflicts with § 1673f(a)(2) by requiring assessments in amounts equal to the security posted at the time of entry when an administrative review is not requested. *Id.* at 17.

Torrington also contends that the challenged regulation conflicts with the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade ("GATT") (1979). *Id.* at 11–15. Specifically, Torrington claims that, with one exception that is not relevant here, Article 8 of the GATT [3] permits the assessment of antidumping duties only upon the completion of all administrative procedures. *Id.* at 12–13.

Torrington claims that the challenged regulation also contradicts Article 11(1) of the GATT [4] which regulates retroactive assessments. *Id.* at 14. Torrington asserts that retroactive duties are only permitted in limited situations which are not applicable in the present case. *Id.* at 14–15.

Torrington asserts that this Court should give effect to the GATT. *Id.* at 15–16. Torrington argues that Congress intended to implement the GATT when it enacted the 1979 Act. *Id.* at 15. Furthermore, Torrington maintains that statutes must be construed harmoniously with international agreements when such a construction is possible. *Id.* at 15–16. Torrington concludes that Commerce does not have the authority to enact a regulation that conflicts with either the antidumping duty statute or the GATT. *Id.* at 17–19.

---

3. Article 8 of the GATT, titled "Imposition and Collection of Anti-dumping Duties," states in pertinent part:

> 1. The decision whether or not to impose an antidumping duty in cases where all requirements for the imposition have been fulfilled and the decision whether the amount of the anti-dumping duty to be imposed shall be the full margin of dumping or less, are decisions to be made by the authorities of the importing country or customs territory.
> . . . .
> 3. The amount of the anti-dumping duty must not exceed the margin of dumping as established under Article 2. Therefore, if subsequent to the application of the anti-dumping duty it is found that the duty so collected exceeds the actual dumping margin, the amount in excess of the margin shall be reimbursed as quickly as possible.

4. Article 11(1) of the GATT, titled "Retroactivity," states:

> 1. Anti-dumping duties and provisional measures shall be applied to products which enter for consumption after the time when the decision taken under paragraph 1 of Article 8 [permitting the imposition of anti-dumping duties] and paragraph 1 of Article 10 [permitting provisional measures], respectively, enters into force, except that in cases:
> . . . .
> If the anti-dumping duty fixed in the final decision is higher than the provisionally paid duty, the difference shall not be collected. If the duty fixed in the final decision is lower than the provisionally paid duty or the amount estimated for the purpose of the security, the difference shall be reimbursed or the duty recalculated, as the case may be.

Finally, Torrington rejects Commerce's construction of the antidumping duty statute as conflicting with the requirements of due process. *Plaintiff's Reply Brief* at 10–11. According to Torrington, assessments based on preliminary rates reached prior to statutory hearings unfairly deny due process of law. *Id.* at 10.

In rebuttal, Commerce asserts that 19 C.F.R. § 353.22(e) comports with both the antidumping duty statute and the GATT. Commerce argues "the amount" in 19 U.S.C. §§ 1673 and 1673e does not refer to the final less than fair value ("LTFV") determination but, instead, refers to the *actual* margin of dumping determined during an administrative review pursuant to 19 U.S.C. § 1675. *Defendant's Brief* at 11 (emphasis supplied). Commerce contends that 19 U.S.C. § 1673 does not specify the manner in which the actual antidumping margins are to be determined. *Id.* at 11–12. According to Commerce, the completion of an antidumping duty investigation subjects the investigated class or kind of merchandise to the eventual imposition of antidumping duties, and establishes a cash deposit rate for the deposit of estimated antidumping duties upon future imports. *Id.* at 13. Commerce explains that the final assessment of antidumping duties is accomplished pursuant to an administrative review of merchandise subject to the antidumping duty order under 19 U.S.C. § 1675. *Id.* at 13–14.

Commerce further asserts that 19 U.S.C. § 1675 does not specify the manner in which Commerce is to determine the amount of antidumping duties to be assessed when no administrative review is requested. *Id.* at 14–15. Commerce maintains that Congress left it to Commerce's discretion to provide, by regulation, for duty assessment upon entries for which no review is requested. Commerce cites the following passage from the legislative history of 19 U.S.C. § 1675 to support this assertion:

The Conferees agreed to the House provision. Item 17(a) is designed to limit the number of reviews in cases in which there is little or no interest, thus limiting the burden on petitioners and respondents, as well as the administering authority. *The committee intends the administering authority should provide by regulation for the assessment of antidumping and countervailing duties on entries for which review is not requested,* including the elimination of suspension of liquidation, and/or the conversion of cash deposits of estimated duties, previously ordered.

H.R.Conf.Rep.No. 3398, 98th Cong., 2d Sess. at 181 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4910, 5298 (emphasis added). Commerce contends that 19 C.F.R. § 353.22(e) was passed in response to the above congressional request. *Defendant's Brief* at 15. Commerce suggests that the challenged regulation is a reasonable means of accomplishing the assessment of duties upon entries for which an administrative review has not been requested. *Id.* at 16.

Commerce concedes that the rates calculated in the amended final results may be a more accurate calculation of the dumping margins for the period of investigation than the rates from the preliminary determination. *Id.* Commerce maintains, however, that the rates from the amended final results may not accurately reflect the actual dumping margins during the first administrative review period. *Id.* Commerce explains that in the case at bar, Commerce originally investigated a period from October 1, 1987 to March 31, 1988 rather than reviewing entries during the period from November 9, 1988 to May 15, 1989 about which Torrington complains. *Id.* at 16–17. Accordingly, Commerce contends that the dumping margins determined in the amended final results do not reflect the actual dumping margins for entries made during the period from November 9, 1988 to May 15, 1989. *Id.* at 17.

Commerce also contends that the challenged regulation does not conflict with 19 U.S.C. § 1673f(a)(2). Commerce argues that the plain language of this section mandates the refund of cash deposits only when the amount deposited as estimated duties is greater than the amount ultimately assessed as antidumping duties. *Id.* at 17–18. Commerce emphasizes that under the automatic assessment regulation, duties are always assessed in an amount equal to the deposit rates at the time of entry and, therefore, no

refund of estimated duties is required under 19 U.S.C. § 1673f(a)(2). *Id.* at 18.

Commerce maintains that the automatic assessment regulation was promulgated pursuant to Commerce's statutory authority. *Id.* at 18–19. In addition, Commerce emphasizes that Torrington knew the deposit requirements of the preliminary determination when it entered merchandise into the United States and could have requested an administrative review. *Id.* at 19–20.

In response to Torrington's due process claim, Commerce argues that 19 C.F.R. § 353.22(e) comports with due process requirements because importers have an opportunity to request an administrative review. *Defendant's Reply Memorandum in Support of its Cross–Motion for Summary Judgment ("Defendant's Reply Brief")* at 6–7.

Finally, Commerce claims that this Court need not consider the GATT as long as the regulation does not conflict with domestic regulation. *Defendant's Brief* at 20. Commerce further responds by asserting that the automatic assessment regulation does not conflict with the GATT. *Id.* at 20–24. Commerce argues that Article 8 of the GATT is not applicable because it refers to the "actual dumping margin" which was never determined in the present case due to Torrington's failure to request an administrative review. *Id.* at 22. Similarly, Commerce argues that Article 11 of the GATT is not applicable because the "duty fixed in the final decision" refers to the duty assessed at the end of an administrative review rather than the deposit rate listed in the final determination of an LTFV investigation. *Id.* at 22–23.

This Court disagrees with Torrington's interpretation of the antidumping duty statute. A brief description of the statutory scheme is necessary to explain why Torrington's interpretation is without merit. Section 1673 of Title 19, United States Code, sets forth the general proposition that when Commerce determines that foreign merchandise is being sold in the United States at less than its fair value and an industry in the United States is injured or threatened with injury as a result, Commerce may impose an antidumping duty "in an amount equal to the amount by which

the foreign market value exceeds the United States price for the merchandise." 19 U.S.C. § 1673. The procedure for determining antidumping duties is established by 19 U.S.C. § 1673a (1988) and subsequent sections. Pursuant to the procedure set out in the statute, usually 160 days after the filing of a petition, Commerce makes a preliminary determination which includes the estimated average amount by which the foreign market value exceeds the United States price. 19 U.S.C. § 1673b(b)(1)(A) (1988). If there is an affirmative preliminary determination, Commerce orders both the suspension of liquidation of all entries of merchandise subject to the determination, and the posting of a cash deposit, bond, or other appropriate security for each entry of the merchandise covered equal to the estimated average amount by which the foreign market value exceeds the United States price. 19 U.S.C. § 1673b(d)(1) & (2) (1988). Generally, within seventy-five days of the preliminary determination, Commerce makes a final determination. 19 U.S.C. § 1673d(a)(1) (1988). If the final determination is affirmative, Commerce continues the suspension of liquidation and the collection of cash deposits or other security. 19 U.S.C. § 1673d(c)(4)(A) (1988). In addition, after a final determination, Commerce orders Customs "to assess an antidumping duty equal to the amount by which the foreign market value of the merchandise exceeds the United States price of the merchandise." 19 U.S.C. § 1673e(a)(1) (1988).

Pursuant to 19 U.S.C. § 1675, an interested party may request an administrative review of the amount of duty assessed. Title 19, United States Code § 1675 provides:

**(a) Periodic review of amount of duty**

 **(1) In general**

　At least once during each 12–month period beginning on the anniversary of the date of publication of a countervailing duty order ... the administering authority, if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall—

.　　.　　.　　.　　.

(B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty ...

.    .    .    .    .

and shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.

**(2) Determination of antidumping duties**

For the purpose of paragraph (1)(B), the administering authority shall determine—

(A) the foreign market value and United States price of each entry of merchandise subject to the antidumping duty order and included within that determination, and

(B) the amount, if any, by which the foreign market value of each such entry exceeds the United States price of the entry.

The administering authority, without revealing confidential information, shall publish notice of the results of the determination of antidumping duties in the Federal Register, and *that determination shall be the basis for the assessment of antidumping duties on entries of the merchandise included within the determination and for deposits of estimated duties.*

(Emphasis added).

In the present case, Torrington did not request an administrative review. This Court agrees with Commerce that 19 U.S.C. § 1675 does not determine the amount of antidumping duties to be assessed when no administrative review is requested. The plain language of the statute does not indicate a method for assessing antidumping duties when no administrative review is requested. The legislative history of this provision, however, clearly required Commerce to promulgate a regulation for the assessment of antidumping duties on entries for which no review is requested. Congress, at least implicitly, has delegated authority to Commerce to clarify a portion of the statute

by regulation. This Court, therefore, "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Thus, this Court must defer to Commerce's interpretation of the statute as long as it is reasonable.

Torrington takes a few phrases from several sections of the antidumping duty statute out of context and ignores the overall structure of the statutory scheme. Torrington's construction would require this Court to find that the definition of a dumping margin is different in 19 U.S.C. § 1673 than it is in 19 U.S.C. § 1675. According to Torrington, "the amount by which the foreign market value exceeds the United States price," for purposes of 19 U.S.C. § 1673 means the amount as determined in the final determination of the LTFV investigation. However, under Torrington's analysis, "the amount ... by which foreign market value ... exceeds the United States price" referred to in 19 U.S.C. § 1675, means the amount determined at the end of a § 751 review. There is no evidence supporting Torrington's assertion that Congress intended identical wording within the same statute to have different meanings.

■ Furthermore, 19 U.S.C. § 1673f(a)(2) does not support Torrington's contentions. 19 U.S.C. § 1673f(a)(2) states:

If the amount of a cash deposit collected as security for an estimated antidumping duty under section 1673b(d)(2) of this title [requiring the deposit of security after an affirmative preliminary determination of sales at less than fair value] is different from the amount of the antidumping duty determined under an antidumping duty order published under section 1673e of this title [concerning the final assessment of duties], then the difference for entries of merchandise entered ... before notice of the affirmative determination of the Commission under section 1673d(b) of this title is published shall be—

.    .    .    .    .

(2) refunded, to the extent the cash deposit is higher than the duty under the order.

19 U.S.C. § 1673f(a)(2). The plain language supports Commerce's interpretation of this provision that a refund is only necessary if the deposit for an estimated duty is greater than the amount ultimately assessed at the time of entry. The deposit rates assessed for the entries in question were the rates listed in the preliminary determination. The duties ultimately assessed on the same entries were equal to the deposit rates. This does not fully resolve the issue, however, and Torrington is correct in its assertion that it is circular for Commerce to argue that the regulation is valid because duties are assessed at a rate equal to the deposit rate without first determining whether use of the deposit rate of the preliminary determination is proper. *Plaintiff's Reply Brief* at 8–9. This Court finds, however, that the preliminarily determined rates are a proper basis for assessing antidumping duties for entries made between publication of the preliminary and final determinations. Commerce's regulation need only be a reasonable interpretation of the statute. There is nothing in the antidumping duty statute that precludes Commerce from using the preliminary rates when no review is requested. On the contrary, as discussed above, the structure of the statute supports Commerce's actions.

In addition, an administrative review in this case would have covered entries during the period from the date of suspension of liquidation (the date of the preliminary determination in this case) to the end of the month immediately preceding the first anniversary month of the publication of the antidumping duty order. 19 C.F.R. § 353.22(b)(2) (1990). As discussed above, administrative reviews are only available upon request pursuant to 19 U.S.C. § 1675, and Congress has left it to Commerce's discretion to determine assessments when no administrative review is requested. If Torrington did not want the preliminary rates to apply, it could have requested an administrative review. This Court is inclined to agree with Commerce that Torrington wanted to avoid a review of the entries assessed at the amended final results at rates significantly lower than the preliminary rates. The rates assessed in the amended final results for ball bearings and cylindrical roller bearings were 54.27% and 43.36%, respectively. *Amended Final Results,* 54 Fed.Reg. at 20,910–11. These rates were significantly lower than the preliminary rates for ball bearings and cylindrical roller bearings which were 131.86% and 45.56%, respectively. *Preliminary Determination,* 53 Fed.Reg. at 45,318. Torrington chose not to request an administrative review knowing that the automatic assessment regulation would apply requiring Commerce to assess antidumping duties at a rate equal to the estimated duty deposit rate at the time of entry. This Court has refused to permit relief for importers harmed by their own decisions. *See Federal–Mogul Corp. v. United States,* 16 CIT 893, 895–96, 809 F.Supp. 99 (1992) (denying a modification of a preliminary injunction to release cash deposits of estimated antidumping duties).

■ In light of the above, this Court also finds that there is no merit to Torrington's claim that it was denied due process. A full administrative process pursuant to 19 U.S.C. § 1675 was available to Torrington if it chose to request a review. Commerce had published a notice regarding this option on May 8, 1990. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review,* 55 Fed.Reg. 19,093 (1990).

■ This Court's finding that Commerce's construction of the antidumping duty statute is reasonable eliminates any need to discuss Torrington's assertion that the challenged regulation conflicts with the GATT. In *Suramerica de Aleaciones Laminadas, C.A. v. United States,* 966 F.2d 660, 667–68 (Fed.Cir. 1992), the CAFC rejected the plaintiff's argument that the statutory provisions of the antidumping duty statute and countervailing duty statute should be interpreted consistent with the GATT. The CAFC stated:

[E]ven if we were convinced that Commerce's interpretation conflicts with the GATT, which we are not, the GATT is not controlling. While we acknowledge Congress's interest in complying with U.S. responsibilities under the GATT, we are

bound not by what we think Congress should or perhaps wanted to do, but by what Congress in fact did. The GATT does not trump domestic legislation; if the statutory provisions at issue here are inconsistent with the GATT, it is a matter for Congress and not this court to decide and remedy.

*Suramerica*, 966 F.2d at 667–68 (citations omitted). Following this reasoning, this Court need not consider whether the challenged regulation conflicts with the GATT since this Court finds that Commerce's interpretation of the antidumping duty statute was reasonable.

### *Conclusion*

In accordance with the foregoing opinion, this Court after due deliberation and a review of all papers in this action, finds that the automatic assessment of duties pursuant to 19 C.F.R. § 353.22(e) is valid. For the reasons stated above, judgment is hereby entered for the defendant. This case is dismissed.

### JUDGMENT