**Slip Op. 00-119**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____
                                       :
DYNACRAFT INDUSTRIES, INC.,             :
                                       :
            Plaintiff,                  :
                                       : Ct. No. 99-03-00125
            v.                          :
                                       :
UNITED STATES,                          :
                                       :
            Defendant.                  :
_____:

[Summary Judgment for Defendant.]

                              Dated: September 8, 2000

Grunfeld, Desiderio, Lebowitz & Silverman LLP (Bruce M. Mitchell, Mark E. Pardo and Michael T. Cone), for plaintiff Dynacraft Industries, Inc.

David W. Ogden, Assistant Attorney General, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice (James A. Curley), Beth C. Brotman, Office of Assistant Chief Counsel, United States Customs Service, for defendant.

## Opinion

**RESTANI, Judge:** This matter is before the court on cross motions for Summary Judgment, pursuant to USCIT Rule 56, brought by both plaintiff, Dynacraft Industries, Inc. ("Dynacraft"), and defendant, the United States.[1]  In this

-----

[1] Dynacraft originally styled its motion as a request for Judgment Upon the Agency Record, pursuant to Rule 56.1. Because this case could require the court to make factual
                                        (continued...)

matter, the United States Customs Service ("Customs") refused to grant Dynacraft interest on the cash deposits that it had posted, before any antidumping duty order was published, as security for potential antidumping duties on its imports. Ruling Letter (Nov. 24, 1999), at 1-3, HQ 227689, Pl.'s App., Ex. B, at 1-3.

Dynacraft contends that the refusal to refund interest following the final negative antidumping determination violates Customs' obligation to pay interest on duties pursuant to 19 U.S.C.A. § 1505(b) and (c) (West Supp. 1999).[2] Defendant responds that this general statutory provision is inapplicable to antidumping duties. Instead, Defendant argues

---

[1](...continued) determinations rather than review agency decisions upon the record, the motion is properly submitted as a USCIT Rule 56 motion.

[2] 19 U.S.C. § 1505 (b) and (c) provides in relevant part:
    (b) Collection or refund of duties, fees, and interest due upon liquidation or reliquidation
    The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon as determined on a liquidation or reliquidation . . .
    (c) Interest
    Interest assessed due to an underpayment of duties, fees, or interest shall accrue, at a rate determined by the Secretary, from the date the importer of record is required to deposit estimated duties, fees, and interest to the date of liquidation or reliquidation of the applicable entry or reconciliation . . .

that 19 U.S.C. §§ 1673f and 1677g, which are found within the unfair trade laws, govern the payment of interest in this case. Defendant contends that these statutory provisions prohibit the payment of interest for security posted before the publication of an antidumping order. The court agrees with Defendant.

### Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).[3] Dynacraft posits that the court may have jurisdiction pursuant to 28 U.S.C. § 1581(i) (1994).[4] Because § 1581(a) provides an adequate method of review, the court does not have jurisdiction pursuant to § 1581(i). Miller & Co. v. United States, 824 F.2d 961, 963 (1987) (section

---

[3] 28 U.S.C. § 1581(a) provides that:
    The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930 [19 U.S.C. § 1515].
28 U.S.C. § 1581(a) (1994).

[4] 28 U.S.C. § 1581(i) provides, in relevant part, that:
    In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section . . ., the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for –
        . . .
        (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue . . .
28 U.S.C. § 1581(i) (1994).

1581(i) does not apply if another subsection of § 1581 is available).

As set forth in 28 U.S.C. § 1581(a), the court has jurisdiction over civil actions contesting the denial of a protest under 19 U.S.C.A. § 1515 (West 1998). Section 1515 requires that protests be filed in accordance with 19 U.S.C.A. § 1514 (West 1998). Section 1514 provides that decisions of Customs, specifically listed in 19 U.S.C. § 1514(a)(1)-(7), shall be final unless an interested party files a protest or unless an interested party files a civil action contesting the denial of a protest in the United States Court of International Trade. 19 U.S.C. § 1514(a). Dynacraft's protest falls within § 1514(a)(5), which involves "the liquidation or reliquidation of an entry."[5] Dynacraft

---

[5] Section 1514 provides in relevant part:
(a) Finality of decisions; return of papers
        [D]ecisions of the Customs Service, including the legality of all orders and findings entering into the same, as to –
    . . .
        (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;
    . . .
shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade . . .

protested the liquidation of entries between November 14, 1995, and April 29, 1996, and the liquidation of entries between March 21 and March 28, 1997, seeking interest on the refunded cash deposits.  Ruling Letter, at 1, Pl.'s App., Ex. B, at 1.  Because Customs denied Dynacraft's protest, and Dynacraft timely appealed therefrom, this action is properly before the court pursuant to 28 U.S.C. § 1581(a).  See American Motorists Ins. Co. v. United States, 8 F. Supp.2d 874, 875-76 (Ct. Int'l Trade 1998) (holding that plaintiff's challenge of a denial of a protest of lack of interest on additional duties falls under 28 U.S.C. § 1581(a) and not § 1581(i)).

## Standard of Review

The court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part is entitled to judgment as a matter of law.  USCIT Rule 56(d).

## Background

The United States Department of Commerce ("Commerce") published an affirmative preliminary determination in its antidumping duty investigation of bicycles from China on

November 9, 1995.  Bicycles from the People's Republic of China, 60 Fed. Reg. 56,567 (Dep't Commerce 1995) (aff. prelim. det.) [hereinafter "Preliminary Determination"].  Commerce set a preliminary estimated dumping margin of 5.29% *ad valorem* for entries of merchandise exported by Chitech Industries, Ltd. ("Chitech") made on or after November 9, 1995.  Id. at 56,574. The Preliminary Determination also held that "[t]he Customs Service will require a cash deposit or posting of a bond equal to the estimated dumping margins . . .."  Id. at 56,574.

On April 30, 1996, Commerce published its final determination in the antidumping investigation.  Bicycles from the People's Republic of China, 61 Fed. Reg. 19,026 (Dep't Commerce 1996) (aff. fin. det.) [hereinafter "Final Determination"].  Commerce established a final antidumping duty deposit rate for Chitech of 2.05 percent for entries made between April 30, 1996, and May 7, 1996.  Id. at 19,045.

In June of 1996, in its final injury investigation, the U.S. International Trade Commission ("ITC") determined that imports of bicycles from China did not injure or threaten injury to the U.S. bicycle industry.  Bicycles from China, 61 Fed. Reg. 33,137, 33,137 (ITC 1996) (neg. fin. injury det.). Customs issued a telex notifying the port directors that the ITC had terminated the investigation involving bicycles from

China.  Custom's Telex to Port Directors (June 6, 1996), at 1,

No. 6158117, Pl.'s App., Ex. A, at 1.[6]  Customs directed the

port directors to suspend liquidation of entries of

merchandise covered by the scope of the investigation made

between November 9, 1995 and May 7, 1996, and to refund all

cash deposits securing estimated antidumping duties on the

entries without interest, because 19 U.S.C. § 1677g "does not

apply."[7]  Id.

Between March 1997 and May 1998, Customs liquidated

sixty-three entries made by Dynacraft of Chitech exports

during the time period at issue.  Def.'s Br. (Apr. 14, 2000),

at 3.  Dynacraft filed protests as to these liquidations.

Customs then reliquidated the entries and refunded the cash

deposits in May, 1998.  Id.  Dynacraft filed a protest of the

---

[6]  Both affirmative Commerce and ITC determinations are
required before an antidumping duty order is published.  19
U.S.C. § 1673 (1994).

[7]  In this case, factual determinations are unnecessary
because Dynacraft has adopted Defendants' statement of
material facts.  Pl.'s Br. at 1.  Dynacraft qualified one
statement, though, alleging that Customs acknowledged that 19
U.S.C. § 1677g(a) does not apply.  Dynacraft misinterprets
Customs meaning and actions.  Pursuant to that telex, Customs
did not allow interest for the cash deposits liquidated.
Customs explained its terse statement when it denied
Dynacraft's protest of denial of interest.  Customs clarified
that section 1677g did not allow for recovery of interest, not
that section 1677g did not apply.  Ruling Letter, at 1-3,
Pl.'s App., Ex. B, at 1-3.  Thus, only a question of law is
before the court.

reliquidations, seeking interest on the refunded cash deposits. <u>Id.</u> Customs denied Dynacraft's protests on the ground that the cash deposited as security for estimated antidumping duties are not "estimated 'duties and fees'" within the meaning of 19 U.S.C. § 1505. <u>Ruling Letter</u>, at 3, Pl.'s App., Ex. B, at 3.

## Discussion

Dynacraft argues that it is entitled to interest because its cash deposits should be considered "excess moneys" under 19 U.S.C. § 1505(b) and (c) (1994). Defendant responds that the actual issue is whether the cash deposits are an amount posted pursuant to an antidumping order as set forth in 19 U.S.C. § 1673f(b) (1994).

Rather than posting a bond, Dynacraft made cash deposits pursuant to 19 U.S.C. § 1673b(d)(1)(B) (1994).[8] In <u>Timken Co. v. United States</u>, the Federal Circuit held that the difference

---

[8] 19 U.S.C. § 1673b(d)(1)(B) provides, in relevant part, that:
> (d) [i]f the preliminary determination of the administering authority . . . is affirmative, the administering authority –
> . . .
> (B) shall order the posting of a cash deposit, bond, or other security, as the administering authority deems appropriate, for each entry of the subject merchandise in an amount based on the estimated weighted average dumping margin or the estimated all-others rate, whichever is applicable . . .

between duty deposits made pursuant to § 1673b(d)(1)(B) as

security and duty deposits made pursuant to 19 U.S.C. §

1673e(a)(3)[9] as post-antidumping duty order estimated

antidumping duties is critical.  37 F.3d 1470, 1477 (Fed. Cir.

1994).[10]  In Timken, the domestic party sought to have interest

collected for the post-preliminary results period because

bonds and not cash were deposited as security.  The opinion

makes clear that whether or not cash is deposited as security

---

[9]  19 U.S.C. § 1673e(a)(3) (1994) provides, in relevant part, that:
      (a)  Within 7 days after being notified by the Commission of an affirmative determination . . . the administering authority shall publish an antidumping duty order which —

            . . .

            (3)  requires the deposit of estimated antidumping duties pending liquidation of entries of merchandise at the same time as estimated normal customs duties on that merchandise are deposited.

[10]  Timken analyzed the pre-URAA version of § 1673f which has remained substantially unchanged since its enactment in 1979. See Trade Agreements Act of 1979, Pub. L. 96-39, § 101, 93 Stat. 144, 173 (July 26, 1979).  This provision did not change in 1994 except to reflect the re-ordering of the statute.  See 19 U.S.C. § 1673f, as amended by Uruguay Round Agreements Act, Pub. L. 103-465, 108 Stat. 4857 (Dec. 8, 1994) (substituting "1673b(d)(1)(B) for "1673b(d)(2)" in heading and text).  Moreover, Congress affirmed the point Timken made by changing § 1673f(a) from "cash deposit collected" to "cash, bond or other security."  See 19 U.S.C. § 1673f(a), as amended by Miscellaneous Trade and Technical Corrections Act of 1996, Pub. L. 104-295, § 40, 110 Stat. 3488, 3541 (Oct. 11, 1996); see also Timken, 37 F.3d at 1477 (noting that both cash deposits and bonds are security for future duty assessments as set forth in §§ 1673b(d)(2) and 1673f(a)).  Therefore, reliance on Timken is appropriate.

pursuant to § 1673b(d)(1)(B), there is to be no recovery of

interest pursuant to 19 U.S.C.A. § 1673f(a) (West 1998).  Id.[11]

On the other hand, if cash is deposited as estimated

antidumping duties pursuant to § 1673e(a)(3), section

1673f(b)[12] explicitly provides for recovery of interest

pursuant to 19 U.S.C. § 1677g (1994) on the post-order

---

[11]  19 U.S.C.A. § 1673f(a) provides in relevant part:
        If the amount of a cash deposit, or the amount of
any bond or other security, required as security for an
estimated antidumping duty under section 1673b(d)(1)(B) of
this title is different from the amount of the antidumping
duty determined under an antidumping duty order published
under section 1673e of this title, then the difference for
entries of merchandise entered, or withdrawn from warehouse,
for consumption before notice of the affirmative determination
of the Commission . . . is published shall be –
        . . .
     (2)  refunded or released, to the extent that the cash
deposit, bond, or other security is higher than the duty under
the order.
19 U.S.C.A. § 1673f(a) (West 1998)(emphasis added).  No
provision for interest is included.

[12]  19 U.S.C. § 1673f(b) provides, in relevant part:
        If the amount of an estimated antidumping duty
deposited under 1673e(a)(3) of this title is different from
the amount of the antidumping duty determined under an
antidumping duty order published under section 1673e of this
title, then the difference for entries of merchandise entered,
or withdrawn from warehouse, for consumption after notice of
the affirmative determination of the Commission . . . is
published shall be –
        . . .
        (2)  refunded, to the extent that the deposit under
section 1673e(a)(3) of this title is higher than the duty
determined under the order,

together with interest as provided by section 1677g of this
title.

deposits.  Id.[13]

The rationale supporting this scheme can be found in

Hide-Away Creations, Ltd. v. United States, 8 CIT 286, 598 F.

Supp. 395 (1984).  In Hide-Away, the court addressed, not

whether an importer must pay interest on shortfalls, but

whether Commerce must pay interest on overpayments of amounts

deposited as security for estimated countervailing duties

pursuant to 19 U.S.C. § 1677g.[14]  As in this case, plaintiff

Hide-Away sought interest for cash deposits it had made after

an affirmative preliminary determination.  Id. at 289, 598 F.

Supp. at 397.  Section 1677g, though, is clear about when

liability for interest attaches.  "In specifying which entries

would be eligible for interest under 19 U.S.C. § 1677g,

Congress chose the point in an investigation at which an

importers' liability for countervailing duties first becomes

---

[13]  19 U.S.C. § 1677g provides, in relevant part:
        Interest shall be payable on overpayments and
underpayments of amounts deposited on merchandise entered, or
withdrawn from warehouse, for consumption on and after –
        (1) the date of publication of a countervailing or
antidumping duty order under this subtitle or section 1303 of
this title, or
        (2) the date of a finding under the Antidumping Act,
1921.

[14]  Because section 1677g has not changed in any relevant
way since it was enacted in 1979, the court's analysis of when
liability attaches remains applicable.  See 19 U.S.C.A. §
1677g (West 1998), Historical and Statutory Notes; see also
Timken, 37 F.3d at 1476-77.

fixed – that is, upon the ITC's final affirmative injury

determination." Id. at 292-93, 598 F. Supp. at 400.  Because

the ITC made a negative injury determination in this case,

Dynacraft is not entitled to interest on the cash deposits it

had posted as security for antidumping duties in lieu of a

bond.[15]

Dynacraft argues that regardless of the application of

§§ 1673f and 1677g, it may recover interest pursuant to 19

_____

[15]   Dynacraft argues that all estimated duties, including
regular customs duties are a form of security against the
ultimate assessment of duties.  Pl.'s Br. at 6.  Dynacraft
ignores the statutory distinction highlighted by
§ 1673f(a)and(b).  Section 1673f(a) addresses amounts
deposited as security for a potential estimated antidumping
duty whereas section 1673f(b) addresses amounts deposited for
a determined amount of antidumping duty deposited pursuant to
an antidumping order.  See 19 U.S.C. § 1673f(a) and (b).
While that determined amount of duty may be adjusted pursuant
to a review under 19 U.S.C. § 1675, it may become the final
assessed duty if no review is sought from Commerce or pursuant
to the review by Commerce.  See 19 U.S.C. § 1675(a)
(1994)(stating procedures for reviewing determinations of
antidumping duties); 19 C.F.R. § 353.22(e) (1996) (stating
that if petitioner does not request a review, Customs will
assess antidumping duties); see also Torrington Co. v. United
States, 903 F. Supp. 79, 87-88 (Ct. of Int'l Trade 1995)
(finding that 19 C.F.R. § 353.22(e) properly provides for
automatic assessment of duty if no review is sought pursuant
to § 1675); Oki Elec. Indus. Co. v. United States, 11 CIT 624,
626-26, 669 F. Supp. 480, 482-83 (1987) (explaining history of
§ 1675 and holding lack of a § 1675 review request does not
prevent injunction of liquidation and judicial review of
original determination).

U.S.C. § 1505(b) and (c) "on excess moneys deposited."[16]

Dynacraft contends that whether the estimated antidumping duty

is either a determined amount or a security is irrelevant

because any antidumping duty is a "duty" within the scope of

19 U.S.C. § 1505(b) and that any overpayment is therefore

"excess moneys."

The history of the treatment of antidumping and

countervailing duties in relation to ordinary duties is

informative.  Prior to the enactment of the Uruguay Round

Agreement Act ("URAA"), both the court and the statute

distinguished between regular duties and special duties.  The

---

[16]  In 1993, § 1505 was broadened to allow refund of
interest for any excess money deposited.  H. Rep. No. 103-
361(I), at 140, reprinted in 1993 U.S.C.C.A.N. 2552, 2690
("The amendments made . . . will . . . provide equity in the
collection and refund of duties and taxes, together with
interest, by treating collections and refunds equally.").
Prior to that time, it provided for interest to be paid to
Customs on shortages in the deposit.  Compare  North American
Free Trade Implementation Agreement Act, Pub. L. 103-182, §
642, 107 Stat. 2057, 2205 (Dec. 8, 1993) with Customs Courts
Act of 1970, Pub. L. 91-271, § 204, 84 Stat. 274, 283 (June 2,
1970).
    By changing § 1505 to allow for interest for both refunds
and collections generally, Congress created an equitable
arrangement similar to that under §1673f.  For example,
neither the government nor an interested party is required to
pay interest to the other party on any shortfall or excess of
duties deposited between Commerce's preliminary determination
and the ITC's final determination.  28 U.S.C.A. § 1673f(a)
(West 1998).  On the other hand, both the government and an
interested party are required to pay interest on any shortfall
or excess of duties deposited pursuant to §1673e(a)(3). 19
U.S.C. § 1673f(b).

Customs Court originally referred to "regular duties" as those duties "levied under the various schedules of the Tariff Act of 1930 as assessable on <u>all</u> importations of a particular class of merchandise."  <u>International Forwarding Co. v. United States</u>, 6 Cust. Ct. 881, 882 (Cust. Ct. 1941) (emphasis added).  In contrast, "special duties" were those duties "levied against any particular importations, such as marking duties, or additional duties for undervaluation, or countervailing duties."  <u>Id.</u>  As late as 1975, the statute designated "additional duties" as countervailing duties and "special duties" as antidumping duties.  19 U.S.C. § 1516(a) (Supp. V 1975); <u>see also</u> Trade Act of 1974, Pub. L. 93-618, Title III, § 331(f)(1), 88 Stat. 2048 (Jan. 3, 1975).  The court also has noted that antidumping duties are 'special duties'.  <u>See</u> <u>Badger-Powhatan v. United States</u>, 10 CIT 454, 458, 638 F. Supp. 344, 348-49 (1986).

    In 1988, Congress once more acknowledged the distinction between general customs duties and antidumping and countervailing duties when it amended 19 U.S.C. § 1677h (1988).[17]  It provided that antidumping and countervailing

---

    [17]  Dynacraft asserts that antidumping duties are general or regular duties based on its interpretation of 19 U.S.C. § 1677h.  Because the statute states that antidumping duties "shall not be treated as being regular customs duties," 19
                                                    (continued...)

duties would no longer be treated as "regular customs duties"
for purposes of duty drawback.  H.R. Conf. Rep. No. 100-576,
at 625 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1658.  The
implication is the opposite of Dynacraft's assertion.  It
seems that antidumping and countervailing duties were never
intended to be regular or general duties.

The URAA statutory scheme has carried forward this
distinction.  First, antidumping and countervailing duties are
separated from other duties and placed within a separate
subtitle.  See Tariff Act of 1930, as amended by Uruguay Round
Agreements Act, Pub. L. 103-465, 108 Stat. 4809 (1994).
Second, antidumping duties and countervailing duties are still
treated as "additional duties."  19 U.S.C. § 1673 provides
that an antidumping duty shall be imposed "in addition to any
other duty imposed."  19 U.S.C. § 1673 (1994); see also 19
U.S.C. § 1671 (1994) (providing for countervailing duties in
addition to "any other duty imposed").

This history does not support Dynacraft's view that
§ 1505 controls.  Nonetheless, whether or not for some

---

[17](...continued)
U.S.C. § 1677h (1994), Dynacraft claims that antidumping
duties should be treated as regular customs duties for all
other purposes.  As indicated, the court reaches the opposite
conclusion.  The amendment brought the statute into agreement
with the prevailing view of such duties as other than regular
duties.

purposes 19 U.S.C. § 1505(b) and (c) include antidumping duties among the "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation," principles of statutory construction prohibit any refund of pre-antidumping duty order cash deposits from including interest.  First, a specific statute that addresses a narrow, precise subject, such as §§ 1673f and 1677g, will be given preference over a later-enacted more general statute, such as the provision of § 1505 relied on by Dynacraft, unless there is a clearly expressed congressional intent to the contrary.  See Radzanower v. Touche Ross & Co., 426 U.S. 148, 153 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.").  Dynacraft does not proffer any evidence of clearly expressed congressional intent that §§ 1673f and 1677g should no longer govern the payment of interest on antidumping duties.

Second, if 19 U.S.C. § 1505 applied in the manner sought by Dynacraft, the interest provision of 19 U.S.C. § 1673f(b) would be redundant.  Pierce v. Underwood, 487 U.S. 552, 582 (1988) (citations omitted) (noting that statutes should not be construed to render a part redundant).  Third, unless § 1505

also creates liability for interest on the part of the

importer for shortages in security after the preliminary

determination, a point Dynacraft has not made, application of

§ 1505 in the manner sought by Dynacraft would create an

imbalance in the statute, which is the opposite of the

legislative intent of the relevant amendments to § 1505.  See

supra, note 16.

Finally, at the very least § 1673f and § 1677g, when read

together with § 1505, create an ambiguity.  "In the absence of

express congressional consent to the award of interest

separate from a general waiver of immunity to suit, the United

States is immune from an interest award."  Library of Congress

v. Shaw, 478 U.S. 310, 314 (1986), abrogated by statute on

other grounds as stated in Landgraf v. USI Film Prods., 511

U.S. 244 (1994).  This general "no interest" rule "provides an

added gloss of strictness" on the usual rule that waivers of

sovereign immunity are construed strictly in favor of the

sovereign.  Id. at 318 (citation omitted).  The court will not

imply that which the statutory text has not unequivocally

expressed.  Id. (citation omitted).

The Federal Circuit also has rebuffed repeatedly any

broad reading of the general Customs interest provisions.

See, e.g., International Bus. Mach. Corp. v. United States,

201 F.3d 1367, 1374 (Fed. Cir. 2000) (no interest on refunds

of harbor maintenance tax under § 1505(c)); Novacor Chemicals,

Inc. v. United States, 171 F.3d 1376, 1381-82 (Fed. Cir. 1999)

(under 28 U.S.C. § 1520(d) and previous version of § 1505(c),

no interest on refund of duty drawback previously reclaimed by

government); Kalan, Inc. v. United States, 944 F.2d 847, 850-

52 (Fed. Cir. 1991) (under 28 U.S.C. § 1520(d) and previous

version of § 1505, no interest on refunds of deposits made for

estimated duties deposited at the time of merchandise's

entry).  In sum, Congress's failure to include expressly

antidumping and countervailing duties in the text of 19 U.S.C.

§ 1505(b) and (c) after it had addressed the issue

specifically in 19 U.S.C. §§ 1673f and 1677g is fatal to

Dynacraft's contention.[18]

---

[18]  Dynacraft believes that the court previously decided
this issue in F. LLI De Cecco di Filippo Fara San Martino,
S.p.A. v. United States, Ct. No. 96-08-01930, 1997 WL 728273
(Ct. Int'l Trade Oct. 23, 1997).  In that case, the court
awarded interest for cash deposits paid as estimated
antidumping duties, at rates established under 19 U.S.C. §
1505(c), as part of a proposed judgment submitted to the
court.  The parties in that case did not raise the issue of
whether interest was owed pursuant to 19 U.S.C. § 1505(c) and
the judgment did not resolve that issue. Assuming arguendo
that the judgment actually can be read to provide for interest
on pre-order deposits, the court is not bound by precedent
where the issue is not raised by counsel or discussed in the
opinion of the court.  United States v. L.A. Tucker Truck
Lines, Inc., 344 U.S. 33, 38 (1952) (finding that prior court
decision is not binding precedent on point neither raised by

(continued...)

## Conclusion

The court finds that Dynacraft is not entitled to interest for the cash deposits posted as security for potential estimated antidumping duties in the absence of an antidumping duty order.  The court hereby GRANTS Defendant's motion for summary judgment and DENIES Dynacraft's motion for summary judgment.

_____
Jane A. Restani
JUDGE

Date:  New York, New York

    This 8th day of September, 2000.

---

[18](...continued) counsel nor discussed in the opinion of the court); National Cable Television Ass'n v. American Cinema Editors, Inc., 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises.") (citation omitted).

**ERRATUM**

Dynacraft Industries, Inc. v. United States, Court No. 99-03-
00125, Slip-Op. 00-119, dated September 8, 2000

Page 18, lines 4 and 7:
    "28 U.S.C. § 1520(d)" should be "former 19 U.S.C. § 1520(d)"

December 14, 2000